*JOYNES, J.
Under the charter of the city of Alexandria, the City Council has authority to “raise money by taxes for the use and benefit of the city.” The council imposed a tax for the year 1858 upon “all real and personal estate in the said city, ’ ’ at the rate of one hundred cents for each one hundred dollars of the assessed value thereof. This tax was assessed upon the rolling stock of the Orange and Alexandria railroad company, and upon certain lots in Alexandria belonging to the company. The tax having been levied for, *319 action was brought by the company to test the right of the City Council to tax the property in question. It came before the court on a case agreed, all matters of form and of pleading being waived, and the parties desiring to present only the question as to the right 'of the City Council to tax the property of the company. The circuit court, being of opinion that the council had a right to impose the tax, gave judgment for the defendant.
It is insisted that this judgment is erroneous on the ground that the railroad company, having paid to the state the passenger tax imposed by the 25th section of the act of March 18, 1856, was, upon the true construction of that section, exempt from any tax whatever, either municipal or state, upon its lands, buildings, or equipments. The section referred to is in the following words:
1 ‘Every railroad, not exempted by its charter from taxation, shall hereafter report semi-annually on the 12th day of April and October in each year, to the auditor of public accounts, the number of passengers transported over said road, or any part thereof, and the aggregate number of miles traveled by such passengers thereon for the six mouths next preceding the first day of April and October in each year. Such statements shall be verified by the oaths of the president and superintendent of transportation. Every company failing to make such reports *shall be fined five hundred dollars. And at the time of making such report the company shall pay into the treasury for every passenger transported a tax at the rate of one mill for every mile of transportation. Every railroad company paying such tax shall not be assessed with any tax on its lands, buildings, or equipments: but if it fails to pay the tax for any six months, then its lands, buildings and equipments shall be immediately assessed, under the direction of the auditor of public accounts, at the full cost of construction and outfit, and a tax shall be at once levied thereon as on other real estate, to be collected by the sheriff in each county or town, as the auditor may direct.”
The question is whether the words “any tax” in the clause of exemption in this section, are to be restricted to state taxation alone, or are to be construed without any restriction, so as to embrace taxation by the city as well as by the state. The real purpose and intention of the legislature is the thing to be ascertained, and this is to be done by having regard not only to the literal sense of the words in question, but also to the context in which they stand, the subject matter of the section, and the reason and purpose of the exemption apparent from its provisions.
I think there is no room for doubt as to the intention of the legislature. The act to which this section belongs is a general law imposing taxes for the support of the state government. This particular section relates to the taxes which railroad companies shall pay to the state. It does not relieve the companies from liability to be taxed on their property; it only compounds for the tax on property by allowing the companies, in lieu of it, to pay a tax on the transportation of passengers, but expressly reserves the right to tax their property, in case of their failure, in any period of six months, to pay x'the tax on the passengers. It only changes the form of taxing the companies by the state, and gives an exemption from the tax in one form, where the tax in the other form has been paid. This exemption was necessary to carry into effect the substitution of one form of tax for the other, and to avoid the injustice of subjecting the companies to a double burden. But this reason did not require that the exemption should be extended to the city tax also, for which no commutation was provided, and which was wholly independent of the tax to the state. I do not perceive any reason connected with the new system of taxation introduced by this act, nor any consideration of convenience or justice, which would make it proper or necessary to allow such an exemption. On the contrary, it would have been obviously unjust for the state to purchase a compliance with the new system on the part of the railroad companies, at the expense of the other tax payers in the cities, wrho would have to sustain the burden of city taxation from which those companies would be relieved by such an exemption.
I think, therefore, that it is clear, upon the construction of this section, that the legislature intended to give to railroad companies, upon payment of the passenger tax, an exemption only from taxation by the state upon their property, and that the right of cities to tax such companies upon their"property was not meant to be affected. This intention must prevail over the mere literal sense of the words, and the more so since the words in this case are not explicit, and in order to give effect to the intention it is not necessary to contradict their plain meaning, but only necessary to limit the scope which they would have, or might have, upon a strictly literal interpretation. Vide 1 Kent’s Com. 462; Dwarris on Statutes, 718-726; United States v. Freeman, 3 How. U. S. R. 556; Phil., Wil. & Balt. R. R. Co. v. Bayless, *2 Gill’s R. 355; Mayor &c. v. Root, 8 Maryland R. 95. I do not think it necessary to examine the cases which have been cited in the argument, relating to exemptions from taxation contained in acts of incorporation, or in general laws under which companies have assumed their corporate powers. In such cases an exemption from taxation, given in general terms, may well be held to extend to municipal taxation as well as state taxation, on the ground that the exemption is designed to secure an advantage to the company, and thus to encourage the enterprise. And in such a case, the words being general, and there being nothing in the subject matter or provisions of the act, or in its apparent policy, to require that *320 their meaning' should be restricted, they are entitled to have their full effect, upon the ordinary rules of construction.
But such cases can have no application to this. The law'now in question was not designed to encourage the construction of railroads, or to confer a bounty of any sort upon railroad companies. It was a mere revenue law, whose whole object was to secure revenue to the state. It was not a part of the fundamental law of such corporations, having the sanctity of a legislative contract, but an ordinary act of legislation, applicable to all railroad companies carrying passengers, whether old or new, finished or unfinished, and liable to repeal at anytime. It was in fact amended in 1860, by requiring the payment of a tax on freights, as well as of a tax on passengers. And besides, as we have seen, the provisions of the act in this case indicate clearly that the legislature intended to give an exemption, upon the condition expressed, from the state tax only.
But it is further contended, that the imposition of a tax by the City Council upon the property of the company, *when it was exempt from taxation by the state by reason of the payment of the passenger tax, was beyond the power of the council under the charter of the city. The charter gives to the council power to raise money by taxes for the use and benefit of the city, but subject to a proviso that the laws passed for that purpose shall not be “repugnant to or inconsistent with the laws and constitution of this state or of the United States.” Act May 7, 1852, § 9.
This proviso only expresses a limitation upon the power of the council which would ha.ve been implied without it. - But it does not confine the taxing power of the council to such subjects as may, from time to time, be taxed by the state. The power is general, to be applied, in the discretion of the council, to any subjects of taxation which may not be withdrawn from their power by the paramount authority of the legislature. The necessities of the city might be such, as compared with those of the state, as to make it proper and just for the City Council to embrace subjects of taxation which, for the time, the condition of the state might enable it to spare, and it would be competent for them to do so. And so in this case, by a stronger reason, when the state does not release the property of the company from liability to taxation for the time, but only compounds for it by accepting, in lieu of it, a tax in another form which it deems more advantageous, it was competent for the city to adhere to its tax upon the property. It is undoubtedly true, as held by this court in City of Richmond v. Daniel, 14 Gratt. 387, that laws conferring the power of taxation upon a municipal corporation are to be construed strictly. But so too are exemptions from taxation to be construed strictly, and when the power of taxation has been once conferred, it is not to be crippled or destroyed by strained interpretations of subsequent laws. It must *be sustained in its full extent under the original grant, until abridged or taken away by a clear expression of the legislative will.
It is contended further, that the railroad company is entitled to be exempted from all taxation whatever upon such of its property as is necessary for the construction and operation of its road and works, upon the authority of Lehigh Co. v. Northampton Co., 8 Watts & Serg. R. 334, and Railroad v. Bucks Co., 6 Barr’s R. 70. These cases, however, are of no authority here, because they proceed upon the local law and policy of Pennsylvania, which do not prevail in Virginia. Schuylkill Nav. Co. v. Com’rs of Berks Co., 1 Jones’ (Pa.) R. 203.
What has been said applies to all the real estate of the railroad company upon which the tax in question was assessed, and to all the personal property permanently located in the city. The judgment must, therefore, be affirmed, because, by the agreement between the parties, judgment was to be rendered for the defendant, if the property assessed, or any part of it, was liable to the tax. It is, therefore, not necessary to consider the question which has been raised as to the liability of the rolling stock, which is not permanently located in Alexandria, but employed in the transportation of freight and passengers between that city and Gordonsville and intermediate points. I have considered the question, however, and as our failure to decide it may imply a doubt upon it, and may possibly lead to another suit, I will proceed briefly to express-my views upon it.
It appears from the case agreed, that the railroad company has its principal office in Alexandria, where its financial and other affairs are managed and its transfer book and books of account are kept, that the directors of the company hold their regular meetings there, that the machine shops are there., where the rolling stock of the ^company is repaired when out of order, and kept when not in actual use, that the clerk and treasurer of the company reside in Alexandria, and that the president, though he resides elsewhere, is usually there attending to the business of the company. Upon this state of facts I am of opinion that the railroad company must be considered, for the purposes of taxation, as having its residence or domicil in Alexandria, and that its rolling stock, though in daily use upon the road, and absent from the city the greater part of the time, is to be considered as belonging there, and is liable to taxation by the city. I think this conclusion is fully sustained by the following authorities: Ontario Bank v. Bunnell, 10 Wend. R. 186; Hays v. Pacific Mail Steamship Co., 17 How. U. S. R. 596; Sangamon & Morgan R. R. Co. v. County of Morgan, 14 Illinois R. 163; Wilkey v. City of Pekin, 19 Illinois 160; City of Sacramento v. California Stage Co., 12 Calif. R. 134. The case in 14 Illinois is in point to the present case, and I am not *321 aware of any case which holds a contrary doctrine.
I am of opinion that the judgment ought to be affirmed.
HONOUR®, P., concurred in the opinion of Joynes, J.
Judgment affirmed.