Staples, J.
The city of Eichmond, by its officers and agents, assessed with taxes, for the years 1865 and 1866, certain lots supposed to lie within the corporate limits, the property of the Eichmond and Danville Eailroad Company, and occupied by its railroad tracks, depots- and other structures. The company refusing to pay said taxes, the city collector levied upon a locomotive belonging to the company, to enforce their collection. The company thereupon applied for and- obtained an injunction from the Circuit court of said city, restraining all proceedings under the levy, upon the ground that its-property is exempt from every species of taxation whatever. This injunction was afterwards perpetuated by a decree of said Circuit court; from which an appeal was taken to this court. The company bases its claim to this exemption upon the provisions of the third section of its charter. The city, on the other hand, resists this *607 pretension on various grounds, which will now he considered.
It is insisted, that it was not the intention of the Legislature to change the legal character of the property held hy the company, but merely to define the nature of the shares therein : and that such shares only are ' ** exempt, and not the property of the corporation. The section of the charter referred to is as follows : “ All machines, wagons, vehicles or carriages belonging to the company, with all their works, and all profits which shall accrue from the same, shall be vested in the respective shareholders forever, in proportion to their respective shares, shall be deemed personal estate, and exempt from any charge - or tax whatsoever.” Very slight consideration of this language will show that the construction sought to be placed upon it, is too restricted. The Legislature, clearly, did not mean to declare that the shares should be vested in the shareholders, and should be deemed personal estate. Such a provision in regard to the shares was wholly unnecessary. The obvious meaning is, that the property designated, that is, the machines and carriages belonging to the company, “ with all their works,” should be deemed personal estate, and exempt from any charge or tax whatsoever. If authority upon this point were necessary, it may be found in the case of the Mayor, &c., of Baltimore v. Balt. & Ohio R. R. Co., 6 Gill’s R. 288. It was held in that case, that the real and personal property of the company was exempt from taxation, under a clause in the charter which provided “that the shares of its capital stock should be deemed personal estate, and exempt from the imposition of any tax or burden. The court say, the design contemplated by the Legislature, in the insertion of this clause, was to confer a substantial, not a nominal, benefit on the stockholders, and to induce capitalists to risk their money in a novel and hazardous enterprise.
To impute to the Legislature, in the case before us, *608 an intention to exempt the shares of stock from taxation, and at the same time to reserve'the right to tax everything which constituted it a stock, and gave it its value, would be gratuitously to cast an imputation upon the inconsistent with every principle of judicial courtesy.
waa atSo insisted, that the clause in question does not have the effect to exempt the real estate of the company, or in any manner to change it into personal property. The correctness of this proposition depends upon the construction of the phrase “with all their works.” The word “works” is one of very extensive signification. In military engineering, it means fortresses, fortifications, ramparts, bastions and the like. In civil engineering it is often applied to depots, engine-houses, bridges, embankments and other structures essential to the franchise and the proper conduct of a railway, or other work of public improvement. It is very clear that it is in this sense the word is used in the present charter, and was intended to apply to all the property* real and personal, owned by said company, and necessary to the management of the road. If the exemption does not embrace the real property of the company, the Legislature has perpetrated the folly of declaring'that mere chattels should be deemed personal estate. It would be attributing to the Legislature the grossest in- ■ consistency-to suppose it-intended to release from all taxation the machinery and rolling stock of the company, and leave it exposed to the burdens of taxation of its depots, engine-houses, coal yards and other necessary structures. The consideration which dictated the exemption of the personal property, equally applied to the realty.
The terms employed in this section were not hastily or unadvisedly selected. They had been repeatedly used in the various charters granted by the Legislature to internal improvement companies. The identical language is *609 found in the first charter ever granted in the State, for the construction of a railway: I allude to the Chesterfield railroad. It may be seen in the charter of the Petersburg Railroad Company ; the second railway of the State. And when in consequence of the increasing number of applications for charters, the Legislature adopted a general railroad law in 1887, the very identical language with the exception of the exemption clause is again employed. Por nearly twenty years every railroad company in the State was incorporated subject to the provisions of this law. It is manifest that the legislative intent was to declare that the property of railway companies, real or personal, should be vested in the respective shareholders as personal estate. And in the Richmond and Danville Railroad Company charter, it is this identical property which is exempt from taxation.
The next ground assumed by appellant, is, that the exemption applies exclusively to State taxes, and not to levies and assessments by the city of Richmond. In the ease of the Mayor &c., of Baltimore v. Baltimore and Ohio Railroad Company, before cited, the Supreme court of Mai’yland say, that the comprehensive phrase “shall be exempt from the imposition of any tax or burden, excludes not only the State’s right to tax the stock, but the right of every corporation created by it.” There are numerous decisions to the same effect, which fully sustain the principal of exemption in this class of cases. Bank of Cape Fear v. Edwards, 5 Ired. R. 516; Camden and Amboy R. R. Co. v. Hillegas & als., 3 Harr. R. 11; State v. Bently, 3 Zalriskie’s R. 532; State v. Comm’rs of Mansfield, 3 Zalriskie’s R. 510, 529; State Bank et al. v. City Council of Charleston, 3 Rich. R. 342; Tax Cases, 12 Gill & John. R. 117.
It was contended, however, that these cases are in conflict with the decision of this court in the Orange & Alex. R. R. Co. v. City of Alexandria, 17 Gratt. 176. I do not think so. That decision was based upon the ground. *610 that the act of the Legislature did not relieve, and was t intended to relieve, railroad companies from taxation, but only compounded for the State tax by allowing com-in lieu of it, to pay a tax on the transportation of passengers. Judge Joynes conceded that an exemption taxation given in general terms, might well be held extend to municipal as well as State taxation ; on the ground that exemption is designed to secure an advantage to the company, and thus encourage the enterprise. In the present case the language is, “ exempt from any charge or tax whatsoever.” It is impossible to employ terms more comprehensive, and more appropriate to the-legislative intent of exempting the company from every species of taxation.
And this brings me to the last and most important ground relied on by the appellant. It is insisted that if it was the intention of the act chartering the Richmond and Danville Railroad Company'to exempt from city taxation the property of the company within the corporation limits, it is to that extent unconstitutional and void, inasmuch as it seeks to impair the contract between the State and the city of Richmond; the executed grant under which, long before and ever since the company was chartered, the city has exercised, and continues to exercise, the power to tax real and personaFpropertylherein, whether held by corporations or individuals.
In the discussion of this proposition, I do not deem it necessary to consider the question so elaborately argued by counsel touching the power of the Legislature to alter, amend, and even to abolish the charters of municipal corporations; nor is it necessary, in my view of this case, to consider whether the various matters relied on by the appellant constitute a contract between the State and the city of Richmond, in the sensepf the constitutional provision which prohibits the obligation of contracts being violated. When the appellant has succeeded in establishing the existence,of such ,a contract, it must *611 also establish that the effect of the law in question is to impair its obligation. It is well settled, that whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract; and it does not impair it provided it leaves the parties a substantial remedy.according to the course of justice as it existed at the time the contract was made. Cooley’s Constitutional Limitation, p. 286, and cases cited.
It was not seriously maintained in the argument, that the ability of the city of Richmond to meet all its liabilities had been or would be materially affected by this exemption. We are sufficiently acquainted with its resources, its wealth and population, to know that the tax thus withdrawn from its treasury bears but a small proportion of the aggregate amount realized from all the sources of taxation within the corporation limits. We know, also, that the real estate of the Richmond and Danville Railroad Company within said limits, constitutes a very small part of the taxable property subject to the jurisdiction of the city.
The only effect of this exemption is that the deficiency thus created must be made up by larger contributions from those already taxed, or by an augmentation of the subjects of taxation. To what extent this will be necessary depends upon a variety of causes ; the growth of the city, the increase of its population, capital, trade, manufactures and commerce. It will not be seriously contended that in any probable event, the loss of an-annual revenue of six or eight hundred dollars will seriously impair the credit of the city, or impose upon its inhabitants an unequal and oppressive weight of taxation. For this loss, whatever it maybe, the city is in a great measure indemnified by the expenditures of the State in works of internal improvement, and the various institutions within the corporate limits, deriving their existence and support from the bounty and patronage of *612 the State. Notwithstanding its many calamities, the city Richmond has steadily advanced in wealth and population ; and no one familiar with its history and its advantages, doubts its continued growth and improvement. That the construction of the Richmond and Danville Railroad has greatly contributed to this gratifying result one will deny. Its beneficent influences are daily experienced in every branch of trade and manufacture and commerce throughout the city. The effect of the exemption is not merely to enable the company to furnish a cheaper and more rapid transportation, but has its influence in increasing the revenues and dividends, and enhancing the public confidence in the bonds of the company ; in all of which the city of Richmond is materially interested.
If the city is left in possession of the power of taxation, and of the means not materially diminished, necessary to nleet all its engagements ; or, if diminished in one respect, supplied from other sources; if all its remedies are substantially preserved, how is the obligation of the contract impaired. Conceding that the charter constitutes an inviolable contract with the State, is it to be maintained that its effect is to deprive the State of all power to relieve any citizen of Richmond, or any property therein, of taxation, no matter how strong may be the considerations of humanity, or how imperiously the public interest may demand such exemptions. If such be the force of city charters, they have an operation far beyond what is universally attributed to them in the Legislature. The amended charter of the city of Lynchburg, granted in 1852, contains substantially the same provisions in regard to subscriptions to works of internal improvement, the contraction of loans, and the assessment and collection of taxes.
It is probable that the same powers, substantially, are vested in the corporate authorities of every city in the 'Commonwealth, and that upon the faith of these grants *613 debts have been contracted, and bonds and certificates issued and negotiated. Eveu where no subscriptions have been made to w'orks of internal improvements, these cities and towns have found it necessary to contract loans for corporate purposes, the erection of public buildings, the opening and repair of streets, the establishment of waterworks, asylums, and other institutions required by the necessities of a city, or suggested by an enlightened and beneficent public policy. Are all these charters and statutes to be regarded as contracts between the cities, on the one hand, and the State on the other, seeming to the former the absolute power of taxation, beyond control or modification by the Legislature?
If the proposition now asserted be correct, the State herself cannot acquire title to real estate in the city of Richmond, free from the city claim for taxes. Should the Legislature desire to endow a college, or bestow its charity upon an institution for the deaf and dumb or insane within the corporate limits, the specific lien of the city for taxes must attach to the property selected for that object, and can only be released by its corporate authorities. The present constitution provides that “the Legislature may exempt all property used exclusively for State, county, municipal, benevolent, charitable, educational and religious purposes.” Will Mr. Daniel maintain, that this provision is utterly null and void, so far as it may affect property in the city of Richmond ? Such is the result of his reasoning. A constitutional provision may impair the obligation of a contract as effectually as a legislative enactment.
The power of exemption, as well as the power of taxation, is one of the essential elements of sovereignty. The right of a Legislature to surrender the power of taxation, in specific cases, has been the subject of one of the ablest and most exhaustive judicial discussions ever known in the Supreme court of the United States, and *614 is now regarded as established upon the most solid foundations of public policy and expediency.
This Power exemption has been and is continually exercised for wise and beneficent purposes by State Legislatures. When the citizen is called on to invest his funds in public enterprises, and institutions of an eleemosynary or literary character, he must understand the nature of the privileges granted him, and the character and rate of taxation to which his investments may be exposed. And so with regard to railways. Their influence is felt in the progress aud extension of manufactures and commerce, in an .ever increasing demand for the products of agriculture, and in the rapid development of the resources of the country. An enlightened policy, appreciating these advantages, invites the investment of capital in such enterprises by granting liberal exemptions from taxation. A power thus essential to a State, which may be exercised so advantageously for the promotion of piety, education aud works of public improvement and utility, should never be held to be surrendered by mere implication, but only by plain and express language.
It is a well settled rule that when privileges are granted to a corporation, the grant is to be construed strictly against the corporation and in favor of the State. See Rice v. Railroad Comp., 1 Black U. S. R. 358. In the Charles River Bridge v. Warren Bridge, 11 Peters U. S. R. 420, it was held by the Supreme court of the United States, that the charter of a bridge corporation not containing any express contract that the State would not authorize another bridge to be built, to the injury of the corporation, no such contract could be implied, and that a law empowering another corporation to erect and maintain a free bridge, was not a law impairing the obligation tion of a contract, though the effect was'practically to deprive the first bridge of all its tolls. Chief Justice Taney said, that whenever any power of the State is said *615 to be surrendered or diminished, whether it be the taxing power, or any other affecting the public interests, it must be done in plain and explicit terms ; that such surrender is never to be assumed ; that the entire community are interested in questions of this character, and they have the right to require that the power of promoting their comfort and convenience, and of advancing public prosperity by providing safe, cheap and convenient ways for the transportation of produce and the purposes of trade, shall not be construed to have been surrendered or diminished by the State unless it shall appear by plain words it was intended to have been done. Jefferson Branch Bank v. Shelly, 1 Black. U. S. R. 436. These views forcibly apply to the present case. They evince the manifest reluctance of the courts to construe charters of incorporation, whether public or private, as contracts on the part of the State for the surrender of important attributes of sovereignty, and the power of advancing the public interest by appropriate and necessai’y legislation.
It has been strongly argued, that if the State may exempt the property of one citizen or corporation, it may by successive acts of legislation divest the city entirely of the power of taxation, and the means of discharging its obligations. The same argument was made in the case of the Providence Bank v. Billings and Pittman, 4 Peters U. S. R. 514. The right to tax the bank was resisted upon the ground that if the State could impose a tax on the bank, it might tax so heavily as to render the franchise of no value, and thus destroy the institution ; and that a power which may in effect destroy the charter, is inconsistent with it, and is impliedly renounced by granting it. Chief Justice Marshall, in combating this view, said : If the power of taxation is inconsistent with the charter because it may be so exeicised as to destroy the object for which the charter is given, it is equally inconsistent with every charter, because it is equally capable of working the destruction of *616 the objects for which every other charter is given.’* Indeed, the same objection may be urged to the exercise every Power hy the Legislature demanding the judg- and discretion of the representative body. The °f taxation itself, and the right of eminent domain may be perverted to purposes of injustice, but this possible abuse furnishes no argument against their exercise within reasonable limits, and with a due regard to private rights.
The case of Von Hoffman v. City of Quincy, 4 Wall. U. S. R. 535, has been relied on as sustaining the pretensions of the appellant. It will be borne in mind, however, that was a proceeding against the city of Quincy by a creditor, to enforce the collection of his debt, no portion of which had been paid. The city was prohibited by an act of the Legislature from levying a sufficient amount to meet its liabilities. So far as the creditor was concerned, that act was practically an entire abrogation of the power of taxation which had beeD granted by previous statutes, and upon the faith of which the city was enabled to issue and negotiate its bonds. The court held the repealing act null and void, as impairing the obligation of the contract, inasmuch as it deprived the creditor of every remedy for the enforcement of his demand.
In the case of Gilman v. City of Sheboygan, 2 Black. U. S. R. 570, the Supreme court fully recognizes the broad-line of distinction between statutes which destroy and-statutes which modify existing remedies. It was there held that where a State Legislature authorizes a city to borrow money, issue bonds, and tax all the property in the city to pay them, this is not a contract with the-bondholders that the State shall not exercise her power to modify the taxation, or exempt portions of the property from all taxation. If such a contract existed, and if a subsequent law exempted all the personal property in said city from taxation, a real estate owner therein *617 has no right to complain on the score of bad faith to the bondholders, if the bondholders themselves are silent. The court further hold that the imposition, modification and removal of taxes, and the exemption of property from such burdens, is an ordinary exercise of State sovereignty ; and if the State could enter into an engagement to surrender this power, that fact should never be assumed unless the language be too clear to admit of a doubt.” This language is directly applicable to the case under consideration : for if one tax payer cannot be heard to complain under such circumstances, neither will all of them combined, nor the corporate authorities representing them, be permitted to make such complaint. Wade & als v. City of Richmond, 18 Gratt. 583; Langhorne & Scott v. Robinson, 20 Gratt. 661; Thurston v. Hooper, 14 Calif. R. 1; People v. Woods, 7 Calif. R. 579; announce the same principles.
These cases show that a legislative enactment, authorizing a municipal corporation to issue bonds and to exercise the power of taxation in order to pay them, may constitute a contract between the State and the holders of such bonds, but they do not show that such enactments constitute contracts between the State and such municipal - corporations. The authorities also establish that these corporations are mere auxiliaries of the government, established for the more effective administration of justice ; and that the power of taxation confided to them is a delegated trust. In the exercise of this power they act as agencies of the State,, and not by virtue of any inherent authority. And whether the Legislature may or may not utterly destroy this power of taxation in particular cases, still it must be-exercised under the control and authority of the State. The manner of apportionment, the form of assessment’ and collection, the species of property which shall be the-subject of taxation or exemption, are matters purely within the legislative discretion, except where the consti *618 tution ordains the rule. If, then, it appeared in this case’ that the effect of the exemption is to impose undue burdens upon the other property holders of'the city of the courts can afford no redress. The only remeby by an appeal to the Legislature, whose wisan(^ Justice ma^ devise Pr0Per and adequate measures of relief.
There is another view of this case deserving a brief consideration. When the city of Richmond subscribed to the stock of the Richmond and Danville Railroad Company, it must have been apprised of the provision in the charter exempting the property of the company from taxation. It knew the terms and conditions upon which the State granted that charter, and invested her funds ; and in making its subscription, in voluntarily becoming a shareholder in the company, the city should be'held to have acceded to these terms and conditions. Under such circumstances it would be gross injustice to permit the city to repudiate a provision operating to the advantage of the State and the private stockholders, whose funds were invested upon the faith of stich provision.
For these reasons I am of opinion there is no error in the decree of the Circuit court; and that the same should be affirmed.
Moncure, P. and Christian, J. concurred in the opinion of Staples, J.
Decree affirmed.