STAPLES, J.,
delivered the opinion of the court.
The first question to be considered is as to the power of the city of Norfolk to impose a license tax upon foreign insurance companies doing business within the limits of that city. This is to be determined upon the provisions of the city charter and the various statutes found in the Code of Virginia relating to the government of towns. The charter provides that “for the execution of their powers and duties, the city councils may raise annually from taxes and assessments in said city such sums of money as they shall deem necessary to defray the expenses of the same, and in such manner as they shall deem expedient, in accordance with the constitution and laws of this state and of the United States. ’ ’ Acts of 1870-’71, p. 187, 198, | 42. This provision is substantially if not literally the same as that contained in the sixty-ninth section of the charter for the city of Richmond. Acts of 1869-’70, page 138. In the ‘ ‘Lawyers’ case, ’ ’ not yet reported, (23 Gratt. 464), it was decided that the latter section conferred upon the corporate authorities of Richmond the general power of taxation, except only as it may be limited b3' the laws of the state or of the United States, and includes all persons and subjects of taxation.
The objection was made in that case, that a power to license involves in its exercise the power to prohibit without such license; and that such power vested in a ^municipal corporation is incom *320 patible with the rights of attorneys conferred by their general license to practice in any and every part of the state. This objection did not prevail. Judge Anderson upon this point,- speaking for the entire court, conceded that the city authorities could not prohibit attorneys at law, already licensed, from practising their profession within the city limits. The exercise of the vocation was however a civil right and privilege, to which are attached valuable immunities and pecuniary advantages, and is a fair subject of taxation by the state and by municipal corporations. The power to impose a license tax upon the profession is included in the general power of taxation given by the sixty-ninth section of the charter, and is not taken away by subsequent limitations.
It must be remembered that the questions arising in the “Lawyers’ case” were not hastily decided; they were twice elaborately argued by very able counsel, and they were very carefully considered by the court. The judges did not agree in their views as to the mode of assessment adopted by the city council of Richmond; but there was an entire concurrence of opinion in regard to the power of taxation. The principles settled by that case are decisive of this. In neither case is the attempt made to prohibit the exercise of the business or vocation. The license required by the corporation is merely a mode of assessing the tax; if it be reasonable and just, it matters but little by what name it is called. The power to impose fines and penalties for a failure to paj7 the tax required, is not only an incident to the power of taxation, but is expressly conferred by statute. Acts of 1870-’l, sec. 19, page 194; Rev. Code 1873, chap. 54, sec. 32, page 528.
It only remains to consider whether the legislature has by express enactment exempted these companies from all municipal taxation. The claim to this exemption is based upon the provisions of the 57th section, chap. 385, Acts of 1871-’2, page 484. This section imposes a specific license tax of $200 upon each insurance company-doing business in the state, and in addition thereto a tax of one-and-one-half per centum upon the gross amount of all its assessments and premiums received in the state.
It further provides, that any company paying this tax, shall be entitled, without payment of any additional tax, to do business in any and every part of the state. It is insisted that the effect of this provision is to relieve insurance companies from the payment of any additional tax, state, county or municipal. As was said in the case of the Orange and Alexandria Railroad Company v. City Council of Alexandria, 17 Gratt. 176, 181, the real purpose of the legislature is the thing to be ascertained; and this is to be done by having regard not only to the literal sense of the words in question, but also to the context in which they stand, the subject-matter of the section, and the reasons and purpose of the exception apparent from its provisions.
In that case, the claim of the railroad company to exemption from all municipal taxation, was based upon the language of the twenty-fifth section of the act of March 18th, 1856. That section provided “that every railroad company paying the tax imposed by that act shall not be assessed with any tax on its lands, buildings or equipments. ” This language, though very comprehensive, did not, in the opinion of this court, sustain the claim of the railroad company to the proposed exemption.
*Judge Jo37nes, with whom the other judges concurred, said that the act to which that section belonged was a general law, imposing taxes for the support of the government, and related exclusively to taxes to be paid the state. It only changed the form of taxing the companies, and gave the exemption from the tax in one form, where the tax in the other form has been paid. But no considerations of reason or justice required that this exemption shall be extended to city taxes, for which no commutation was provided, and which was wholly independent of the tax to the state. These observations apply with peculiar force to the case under consideration.
The 57th section of chapter 385, Acts of 1871-’2, upon which plaintiff in error relies, cannot be considered in any sense a contract between the state and the insurance companies. It was adopted purely as a revenue measure for state purposes. It was designed as a substitute for another form of taxation under previous statutes. Under these statutes, a specific tax was imposed upon each agency in the state, to be assessed and collected in the district in which the agency was located. The legislature intended to alter this mode of assessment and collection, and to substitute for it one uniform specific tax, to be paid at the capitol; and thus relieve the insurance companies and their agents of the burden and annoyance resulting from a multitude of state assessments and collections. To place the matter beyond all controversy- — -to remove all ground for dispute as to the purpose to abolish the local assessments — it was declared that any insurance company complying with the provisions of the act shall be entitled, without the payment of any additional tax, to do business in any part of the state. The statute does *not use the words “any other tax,” but the phrase “any additional tax,” clearly implying an exemption from anj7 further state taxation.
Long anterior to this legislation, insurance companies, foreign and domestic, were subject to municipal taxation. It is not to be presumed that the legislature, merely in reforming its plan of assessment and collection, designed to take from the towns and cities of the state an important branch of their revenue. Certainly no such radical change in the privileges of these municipalities would be established, without any satisfactory and controlling reasons. None such are shown to exist in this case. It may be, as is contended there is, a slight increase of taxation upon these companies; *321 but still it does not exceed that imposed upon telegraph, express and transportation companies, and others of a like character.
The act makes no discrimination against foreign companies, but places them upon the same footing with the domestic; and thus removes every pretense for the complaint that the state pursues an invidious and discriminating policy in behalf of her own citizens. That this policy is not regarded as harsh or oppressive is apparent from the fact that these companies are multiplying all over the state, establishing their agencies in ev$ry city, and, as we may fairly presume, doing a lucrative and valuable business among the people.
They derive their chief revenue from the towns; within their limits the principal officers and agencies are located; the lives and the dwellings they insure are under the protection of the municipal authorities; the fire departments which secure these dwellings from conflagration, the police which guard *the life of the citizen against violence, and all the varied and expensive sanitary regulations which promote health, guarding every avenue against the approaches of pestilence, all these operate undoubtedly to the advantage of the insurance companies. In proportion as life and property are made secure, their profits are increased. Are they to .enjoy the benefits of good government, without contributing in any degree to its expense? Are they alone to be exempt from those common burdens which devolve upon all the inhabitants of towns and cities? It is difficult to believe that such was the purpose of the legislature. And until that purpose is disclosed in the most unequivocal terms, the courts ought not to allow an exemption from a just and reasonable public burden— an exemption inconsistent with the rights and privileges uniformly accorded to Virginia towns, and which must, in some degree, diminish their resources, and affect their interests.
Tor these reasons the judgment of the Corporation court of . Norfolk must be affirmed. If by this decision injustice is done insurance companies doing business in the state, it is gratifying to know that redress can be readily obtained by application to the legislature.
Upon the question of the right of appeal in this case nothing has been said, because the judges are not agreed upon the subject. The case has been considered and decided upon its merits, at the earnest request of the counsel on both sides, who desired a final settlement of the questions in controversy.
Judgment affirmed.