[No. 2127.]

### L. W. Flood *v.* The State.

1. **Municipal Corporations**, like all other corporations, derive their powers from legislative grant, and can do no act for which authority is not expressly given, or may not be reasonably inferred.

2. **Same — Rules of Construction.** — In construing the powers of a corporation, whether public or private, the courts must adopt a strict rather than a liberal construction, and must hold that only such powers and rights can be exercised under charters as are clearly comprehended within the words of the grant, or derived therefrom by necessary implication; and in case of ambiguity or doubt arising out of the terms used by the Legislature, such must be resolved against the power.

3. **Same — Statute Construed — Case Overruled.** — The effect of article 391 of the Revised Statutes (the general incorporation act of this State) is to confer upon city councils the power to enact ordinances declaring what hours on Sundays drinking houses, etc., shall be closed, but it cannot be construed to empower the councils to enact ordinances regulating the hours on Sundays when goods, etc., may be sold. In so far as it announces the contrary doctrine, the case of *Craddock* v. *The State*, 18 Texas Ct. App., 567, is overruled. See the opinion of Willson, Judge, on the doctrine; and note the dissenting opinion of Hurt, Judge.

4. **Same.** — An ordinance to be valid, unless special legislative authority be given for its enactment, must not conflict with a statute, but must conform to the laws of the State. An ordinance, therefore, of the council of a city organized under the general incorporation act, which provides that merchants, etc., may sell goods, etc., on Sundays, before the hour of 9 o'clock A. M. and after 4 o'clock P. M., is invalid, because it is in conflict with article 186 of the Penal Code, which declares a barter or sale of goods, wares or merchandise, etc., on Sundays a penal offense in this State. But note the opinion of Hurt, Judge, dissenting.

Appeal from the County Court of Smith. Tried below before the Hon. J. M. Duncan, County Judge.

The conviction in this case was for the sale of intoxicating liquors on Sunday, and the penalty imposed was a fine of $20.

The opinions disclose the case.

*Cone Johnson* and *T. O. Woldert*, for the appellant. It will be seen that the first error assigned challenges the finding of the court in holding that art. 391, Revised Statutes, was repealed by art. 186, Penal Code, by the provisions of sec. 20, final title, R. S. The Revised Statutes and the Penal Code were adopted by the Sixteenth Legislature on the same day, as the work of the codifiers, and as a new compilation of the laws of the State. While each has its own enacting clause, they may be considered, and are to all intents and purposes, one act, and the provisions of section 20, final title, apply only to other separate and distinct acts of the Sixteenth Legislature on the same subjects as those contained in the Revised Statutes, or such changes therein as the Legislature might deem necessary. For illustration: If the Sixteenth Legislature had passed another act defining the powers of cities, and the provisions of such act had conflicted with the power granted in the Revised Statutes, such other act would have been the law of the State, " the Revised Statutes to the contrary notwithstanding." Now, if the Sixteenth Legislature had passed such an act as the one referred to above, in the absence of section 20 there would have been difficulty in arriving at the legislative intent and in determining which should prevail, and to free such question from controversy and doubt section 20 was passed. That this section did not apply to conflicts between the Revised Statutes and the Penal Code may be seen from the case of *French* v. *The State*, 14 Texas Ct. App., 76, wherein it is held that, in a conflict between art. 3635, R. S., and art. 398, P. C., the Revised Statutes will prevail. Again, that the court of appeals did not consider section 20 as applicable to conflicts between the Revised Statutes and the Penal Code will clearly appear from the case of *Harris* v. *The State*, 9 Texas Ct. App., 308, wherein it is held that there was a conflict between art. 4665, R. S., and art. 358, P. C., the latter prohibiting certain games licensed by the former, and yet the courts of the country were powerless to enforce the gaming law until this conflict was ended, not by section 20, final title, Revised Statutes, but by an act of the Seventeenth Legislature (Acts 17th Leg., pp. 56, 58 and 59). (See *Reeves* v. *The State*, 12 Texas Ct. App., 199.) It is submitted, however, that there is not such a conflict between art. 186 and art. 391, R. S., as that the one must entirely destroy the effect of the other, for, when taken together and given the construction for which we contend, they both may stand.

It is claimed by the appellant that art. 391, R. S., gave to cities the power to permit the sale of liquors within their corporate limits during certain hours on Sunday. The trial judge, as will be

seen from the third assigned error, held that such a construction was contrary to the provisions of art. 342, which provides that " Cities may ordain and establish such acts, laws, regulations and ordinances not inconsistent with the Constitution and laws of this State." This latter article, it is submitted, is like the former — an affirmative grant of power. It does not negatively say that cities shall not pass acts and regulations inconsistent with the laws of the State, where that power is specially delegated, but is a general grant of power to pass all acts not inconsistent with State law, and under it the city government would be confined to the passage of such regulations only as were consistent with the laws of the State. But art. 391 was intended to confer upon municipal corporations an additional power, and specially delegates to them specific authority to supersede the State law within their territory upon this subject by such regulations as to them might seem proper. If art. 391 conferred no greater authority than did art. 342, why the necessity for art. 391? " Why this iterance?" It would be mere surplusage, a construction which will not be accepted so long as any reasonable meaning can be given it.

The fourth error assigned brings in review that part of the trial court's conclusion of law which holds that the city of Tyler could not abrogate the State law within its bounds, if that authority was specially delegated. Such a doctrine is not supported in reason and is not taught in the books.

Fifth error assigned complains of that part of the court's finding which holds that art. 391 gives the power to pass such regulations only as are consistent with art. 186, P. C. There would, as stated in Craddock's case, have been no necessity for giving to cities the power to prescribe hours unless the law intended that the prohibition might last for a less number of hours than those already fixed by law. The hours at which these places should be closed on Sunday were already fixed by the general law. Was it intended to give to cities the power only to prescribe the same hours in order that it might add their little anathema to this offense?

The court held that the ordinance in question did not provide for the closing of houses on Sunday, nor prescribe hours for closing them. From an inspection of the ordinance it will be seen that the city council have permitted the sale of merchandise on Sunday before the hours of 9 A. M. and after 4 P. M., leaving the State Sunday law in full force and effect between these hours. The State law prescribes the hours of 12 Saturday night, and the same hour Sunday night. The city of Tyler, acting within the scope of her authority,

has prescribed other hours, to wit: 9 A. M. and 4 P. M. on Sunday. Does this not prescribe the hours when they shall be closed? The mayor has the same jurisdiction as a justice of the peace, and may, and in fact does, try offenses against the State Sunday law when committed between the hours of 9 A. M. and 4 P. M. So that, in fact, the hours prescribed for the closing of saloons in Tyler are 9 A. M. and 4 P. M.

There is no question as to the facts. The city of Tyler is duly incorporated under the general law; the legal enactment and promulgation of the ordinance is not questioned. The appellant complied fully with the conditions of the ordinance, and was acting under its protection.

From these facts and the principles announced, we conclude:

1st. That art. 391, R. S., is not repealed by art. 186, P. C., by the provisions of sec. 20, final title, R. S.

2d. That art. 391, R. S., is not repealed by implication by art. 186, P. C., or its amendment.

3d. That article 391 is not in conflict with article 342.

4th. That article 391 gives to cities the power to prescribe other hours than those provided by the general law of the State.

5th. That the city of Tyler, acting under this authority, has, by ordinance, prescribed the hours of 9 A. M. and 4 P. M., and the ordinance is a bar to the prosecution.

*J. H. Burts*, Assistant Attorney-General, for the State.

WILLSON, JUDGE. The city of Tyler was incorporated under the general incorporation act, title XVII of the Revised Statutes, and its city council, under article 391, Revised Statutes, is clothed with the power " to close drinking-houses, saloons, bar-rooms, beer-saloons, and all places or establishments where intoxicating or fermented liquors are sold, on Sundays, and prescribe hours for closing them, and also all places of amusements and business."

Article 186 of the Penal Code makes it a penal offense for any merchant, grocer, or dealer in wares or merchandise, or trader in any lawful business whatever, to barter or sell on Sunday, etc.

The city council of Tyler enacted an ordinance which in substance allows a merchant, etc., to sell goods, etc., on Sunday before 9 o'clock A. M. and after 4 o'clock P. M. This ordinance is in direct conflict with article 186 of the Penal Code, above cited.

Did the city council have the authority to enact this ordinance, and thereby abrogate in part the penal statute cited? This is the single question presented in this case. Whatever power the council had must be derived from and measured by the city charter. A

municipal corporation, like all other corporations, derives its powers from legislative grant, and can do no act for which authority is not expressly given, or may not be reasonably inferred. (1 Dillon, Munic. Corp., §§ 89–91, and notes; *Bryan* v. *Page*, 51 Texas, 532.)

It is contended by appellant's counsel that article 391 of the Revised Statutes, above quoted, and which, as before stated, is incorporated in and a part of the charter of the city of Tyler, does confer upon the council of said municipality the power to enact the ordinance in question. No other authority for such power is claimed than said article 391, nor is such authority to be found in any other provision of the charter.

Now what power is granted by article 391? It is to *close* drinking-houses, etc., where liquors are sold on Sundays, and prescribe hours for *closing* them. This is *all* the power conferred. It certainly does not expressly confer the power to permit the *sale* of goods, etc., in violation of the State penal law. It confers no power whatever to regulate in any manner the *sale* of goods on Sunday. It has no reference to that subject. The penal statute relates expressly and exclusively to the *sale* or *barter* of goods, etc., on Sunday. It does not prohibit the keeping open of the establishments where such sales are made. It is not an offense under the statute to keep open on Sunday a drinking-house, bar-room, beer-saloon, etc. Such establishments may be kept unclosed during the whole of Sunday without violating any law of the State. The State, by its legislation, leaves the municipal governments to regulate that matter, and gives them the power, if they see proper to use it, to *close* these establishments on Sunday, and to prescribe the hours of *closing*.

It cannot be reasonably contended that article 391 of the charter *impliedly* authorizes the city council to legislate as to the *sale* of goods, etc., on Sunday. There is not a word in the article which would, in our opinion, justify such implication. In construing the powers of a corporation, whether public or private, the courts adopt a *strict* rather than a *liberal* construction, holding that only such powers and rights can be exercised under charters as are *clearly* comprehended within the words of the grant, or derived therefrom by *necessary* implication; and in case of ambiguity or doubt arising out of the terms used by the Legislature, such must be resolved against the power. (1 Dillon, Munic. Corp., p. 118 and note 3.) Applying this rule of construction to the charter of the city of Tyler, it nowhere by its words expressly or by necessary implication empowers the council to enact the ordinance in question. It follows, therefore, that the ordinance is *ultra vires* and void.

This view is in conflict with the decision in *Craddock* v. *The State*, 18 Texas Ct. App., 567. In that case, however, the precise question we have discussed here was not presented, and did not occur to the court. We are now convinced that in that case we erred in holding that article 391 conferred any authority to permit sales on Sunday, and that decision is therefore overruled.

Again, the ordinance in question is invalid, we think, upon another ground. It is in direct conflict with the penal statute. (Penal Code, art. 186; Amended Gen'l Laws 18th Leg., p. 66.) An ordinance, to be valid, unless special legislative authority be given for its enactment, must not conflict with a statute, but must conform to the laws of the State. (1 Dillon, Munic. Corp., § 319; *Augerhoffer* v. *The State*, 15 Texas Ct. App., 613.) As we have seen, the ordinance in question was not authorized by any legislation, either general or special.

We deem it unnecessary to discuss several questions which were discussed before, and determined by, the learned trial judge, and which have been ably presented to this court by the brief and argument of appellant's counsel. We find in the record the conclusions of fact and of law of the learned judge who tried the case, and in his conclusions of law he shows lucidly and convincingly the invalidity of the ordinance. Referring to said ordinance he says: "The ordinance is a peculiar one. It does not provide for the closing of houses, nor prescribe hours for closing them. It provides no penalty. It is a grant of license to do that which is forbidden by the Penal Code, and not a penal regulation or restraint. It is manifestly intended directly to repeal article 186 of the Penal Code and the amendment thereto, in so far as said article applies to the city of Tyler, as to sales made before 9 A. M. and after 4 P. M. on Sundays. Hence I conclude that the said ordinance is not valid, because not authorized by said article 391 or by title XVII of the Revised Statutes." We are clearly of the opinion that this conclusion of the learned judge is correct. With respect to other conclusions of law arrived at by the judge and incorporated in the record, we express no opinion, as the above conclusion, in which we concur, disposes finally of the case.

The judgment is affirmed.

#### DISSENTING OPINION OF HURT, J.

HURT, JUDGE. While it is very unpleasant for me to disagree with my brethren, yet I must dissent from the opinion and conclusion reached in this case.

The position assumed in the opinion of Judge Willson is that, as article 186 of the Penal Code makes it a penal offense for any merchant, grocer or dealer in wares or merchandise, or trader in any lawful business whatever, to *barter* or *sell* on *Sunday*, article 391, Revised Statutes, does not give the city authority to permit a citizen of the city to *sell or barter on Sunday*. That the power to prescribe the hours for closing the business houses on Sunday is no authority to permit *selling or bartering on Sunday;* and hence, there is no conflict between article 391, Revised Statutes, and article 186, Penal Code. That the penal statute relates expressly and exclusively to the sale or barter of wares, etc., on Sunday; that it does not prohibit the keeping open those establishments where such sales are made; that this matter, to wit, the closing up such houses, is given over to the cities. In short, that all the authority which can be derived from article 391 is to prescribe the hours for closing — shutting up — certain business houses on Sunday.

What, therefore, does the word "closing" mean as used in article 391? Is it simply to shut the doors of the business houses? Let us suppose that we had no law punishing the selling or bartering on Sunday; that article 186 of the Penal Code did not exist; and that under article 391 the city should prescribe that such houses should be closed from 9 A. M. to 4 P. M., annexing a penalty for a violation of such ordinance. *A* is charged with selling whisky or goods after 9 A. M. and before 4 P. M. on Sunday. The proof shows the sale, but that the doors of the house were closed. Would *A* be guilty?

In *Kurtz* v. *The People*, 33 Mich., 279, the defendant was prosecuted to conviction for selling liquors at retail on Sunday, under a certain clause of the statute which reads, "all saloons, restaurants, bars, bar-rooms in towns or otherwise, and all places of public resort where intoxicating liquors are sold, either at wholesale or retail, shall be closed on Sunday;" and the statute further provided that "any person who shall violate any of the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than $25 nor more than $100," etc.

When this case was decided the supreme court of Michigan was composed of Cooley, Campbell, Marston and Graves. Judge Campbell, who delivered the opinion of the court, says: "There is no ambiguity in this statute. It very clearly intends to close up the places named against liquor *selling* on Sundays. . . . It is not important on this record to examine critically into the meaning of

the term 'closed' as applicable to houses, rooms or parts of rooms. It is clearly meant that the *sales at least shall be entirely stopped*, and the traffic shut off effectually, so that *drinking*, and the conveniences for drinking, shall be no longer accessible, and those who frequent them for that purpose shall be dispersed. Common sense will dispose of such cases readily enough. Everybody knows practically what closing a saloon or drinking place means, and there is no occasion for seeking or solving imaginary difficulties."

It follows, therefore, that if the law declares, under penalty, that certain business houses shall be closed on Sunday, or any other day or time, the business pursued or carried on in such houses shall cease,— be suspended. Not merely that the doors of such houses shall be shut, but that the traffic or business shall be entirely shut off effectually.

If, therefore, to "close" a house means to effectually stop the business or traffic of such house, and the city has the power and authority to prescribe at what hours the *business* or traffic shall cease on Sunday by ordering the houses to be closed, most evidently a failure to close before or after the time prescribed would not be a violation of either the Penal Code or of the city ordinance. For if the city has the right,— power,— to say when,— at what hour,— the houses shall be closed, it has the right to permit the houses to be kept open before and after the time prescribed for closing the same. I mean by closing and opening, that, if closed, the business or traffic shall cease; if open, that the business or traffic carried on in such house may continue. The power to close a house means to effectually stop the traffic or business of such house; and from such power being granted, when exercised by the city, it is implied that those engaged in the business may keep open, sell or barter on Sunday, before and after the time prescribed for closing these houses. To hold otherwise would convert the law into a snare and a deception.

The city orders, under the statute of the State, that certain business houses be closed from 9 A. M. to 4 P. M. on Sunday. The merchant, grocer or saloon-keeper obeys the order. He is nevertheless prosecuted for selling on Sunday. He pleads the general act of the Legislature giving to his city authority to prescribe the hours for closing his house on Sunday, and the ordinance. The State replies this may be so, but she prescribed from 12 Saturday night to 12 Sunday night, and the city from 9 until 4; therefore there was no time allowed for selling, etc. The merchant replies that he is of the opinion, if this be so, that there has been "much ado about nothing," and that law is a very strange thing anyway.

The next position of Judge Willson is that the ordinance is in direct conflict with the penal statute (Penal Code, art. 186), and is for this reason invalid. Now, in one sense there is a conflict and in another there is not. Mr. Dillon, treating on conflicts between charters and a general law of the State, says: "It is a principle of very extensive operation that *statutes of a general nature do not repeal, by implication, charters and special acts* passed for the benefit of particular municipalities; but they do so when this appears to have been the purpose of the Legislature. If both the general and the special acts can stand, they will be construed accordingly. If one *must* give way, it will depend upon the supposed intention of the law-makers, to be collected from the entire legislation, whether the charter is superseded by the general statute, or whether the special charter provisions apply to the municipality, in exclusion of the general enactment. So, particular provisions of charter should be read and construed in the light of the whole instrument, of all preceding charters, of the general legislation of the State, and of the object of the Legislature in the erection of municipalities." (Dillon's Mun. Corp., sec. 87.)

It will be seen that we have general legislation on a particular subject in article 186, Penal Code, and special legislation on the same subject in article 391, Revised Statutes. This being the case, what is the rule? It is that general legislation must, in the absence of anything showing a different intent on the part of the Legislature, give way to inconsistent special legislation on the same subject. (See these authorities: *State* v. *Morristown*, 33 N. J. (Law), 57; *Cross* v. *Morristown*, 3 C. E. Green (18 N. J. Eq.), 305; *State* v. *Trenton*, 7 Vroom, 198; *State* v. *Bronin*, 3 Zabr., 484; *State* v. *Clark*, 1 Dutch., 54; *State* v. *Jersey City*, 5 id., 170; *Jersey City* v. *R'y Co.*, 20 N. J. Eq., 360; *Goddard, In re*, 16 Pick., 504; *R. R. Co.* v. *Alexander*, 17 Gratt., 176.)

When considered in this light, there is no conflict. The general law operates all over the State, as well in incorporated cities as elsewhere, with power to the cities to change the law within the city limits.

But concede the conflict, being general and special legislation on a particular subject, if there is a conflict, the general law must yield to the special, unless the legislative intent appears otherwise. *Prima facie*, therefore, the special law prevails, and where in the whole range of legislation have we any evidence of legislative intention that the general law shall prevail? The rule is that the special legislation shall prevail unless something appears showing a different intent on the part of the Legislature, and we have not

found an expression from our Legislature anywhere evidencing a different intention.

In support of the proposition that, as the ordinance is in direct conflict with the general law and is therefore invalid, Judge Willson cites § 319, Dillon's Mun. Corporations. In this section Mr. Dillon is not treating of conflicts in charters and general laws, but alone upon the power of corporations to pass by-laws without grant of power therefor. In this case there is express authority given the city to prescribe the hours for closing certain houses. Under this special grant of power the city claims the right to pass an ordinance prescribing the hours, and that, when such ordinance is made, it supersedes the general law upon this particular subject. If there be no such authority granted, it is evident that the ordinance is void for want of authority to pass it.

We have given our views on this subject in *Craddock* v. *The State*, 18 Texas Ct. App., 567, and I do not feel disposed to elaborate further. But it may be urged that in the Craddock case the city had a charter in which this provision was contained. This is true, but the act of 1875 (March 15) is the charter of any town or city in this State which may organize under its provisions, to the same purpose and effect as would be a special charter; and the powers granted by the general act of March 15, 1875, will be construed as favorably to the city as if granted by a special act or charter.

I am of the opinion that the judgment should be reversed and the case ordered dismissed.

*Affirmed.*

[Opinions delivered December 16, 1885.]