# NEWPORT COUNTY.

——◆——

STATE *vs.* THE NEWPORT STREET RAILWAY COMPANY.

The charter of a street railroad company authorized it to lay tracks " upon " and " over " such streets as the municipal authorities might designate, except "in" certain specified streets in which tracks were not to be laid. Two of the designated streets debouched on to one of the excluded streets almost but not quite opposite each other.

*Held*, that the company could lay its tracks across the excluded street, making a continuous track through the designated streets.

INFORMATION filed by the Attorney General. On petition for a preliminary injunction.

This information was filed on the relation of certain residents of Newport to enjoin the construction of a street railway, and the erection of poles to carry electrical conductors in connection therewith, in the streets of Newport. The case came before the court on a motion for a preliminary injunctive order to prevent track laying across Bellevue Avenue.

*Providence, June* 29, 1889. DURFEE, C. J. This case comes before us on the complainant's petition for a preliminary injunction to restrain the defendant company from constructing a street railroad across Bellevue Avenue in the city of Newport, the ground of the petition being that the company's charter gives it no right so to construct the same. The charter gives the company " power to construct, maintain, and use a railway or railways, with convenient single or double tracks for cars or carriages, to be used for the transportation of passengers only, *upon* and *over* such streets, roads, wharves, and highways of the city of Newport and towns of Middletown and Portsmouth, except *in* Thames Street, Kay Street, Ayrault Street, Buena Vista Street, Beach Street, and *Bellevue*, Rhode Island, and Ocean Avenues, and the avenues and streets to the south of Bath Road and William Street, and east of Spring Street and Coggeshall Avenue, in Newport, as shall be from time to time fixed and determined by the city council of Newport and by the town councils of the towns of Middletown and Portsmouth respectively," etc. The company, claiming to act under this power and having the approval of said city council, have projected and are in the act of constructing a street railroad from Commercial Wharf to Easton's Beach in Newport, the route selected being from said wharf across Thames Street to Levin Street, up Levin Street to Bellevue Avenue, across said avenue to Bath Road, and over said road to the beach, Levin Street and Bath Road both being without the exception. The question is, whether the company has power under the language quoted, the required conditions being complied with, to construct their railway across Bellevue Avenue.

It is urged in support of the petition that the rule of construction for public grants is, that such grants are to be construed strictly, and, unlike private grants, the more favorably for the grantor. This is true, but it is also true that the law, which has

been said to be the perfection of reason, demands a construction which, if possible, shall be reasonable as well as strict, and at least not so strict as to defeat the purpose of the grant, which presumably was intended to be beneficial to the grantee. *Inhabitants of Springfield* v. *Connecticut River R. R. Co.* 4 Cush. 63, 68, 72. And again, in applying the rule that public grants are to be construed the more favorably for the grantor, *i. e.* for the State or the people, it is to be borne in mind that the grant to the defendant company was intended, not simply for the company's benefit, but also for the public accommodation.

It will be observed that the prepositions used in the language quoted to describe where the railway or railways may be constructed are, " upon " and " over," and that the preposition used for the excepted streets is " in," the preposition " across " being nowhere employed. This is significant; for to say of a railway that it is built upon, over, or in a street, which it merely crosses when following the course of another street, is not according to common usage. And see *Chicago & West Ind. R. R. Co.* v. *Dunbar et al.* 100 Ill. 110, 137. For example, Westminster Street in the city of Providence crosses in its course Dorrance, Eddy, Mathewson, and other streets. Suppose said city was without street railways, and the power were given to a company to construct them upon and over such streets, except in Dorrance, Eddy, and Mathewson Streets, as the city council should designate, and the city council should designate Westminster among other streets. It would surely be unwarrantable to hold that the company, in laying its tracks on Westminster Street, could not lay them across Dorrance, Eddy, or Mathewson streets because those streets were excepted. The answer would be, that Westminster Street is as much Westminster Street where it crosses the other streets as it is anywhere else in its course. The place of intersection is common to the intersecting streets, and is regarded as belonging to the one or the other, according as it is contemplated. In keeping with this view, if Levin Street had crossed Bellevue Avenue straight, with the same name on both sides, we should not hesitate to decide that the company were acting within their authority in following the street with their railway. The street does not cross the avenue straight, and does not keep its name. The

street opposite is Bath Road. It is not directly opposite, but diverges southward a little, less than the width of Levin Street. The divergence is not practically material. If Levin Street had crossed the avenue with a similar jog, keeping its name, we should still think the company authorized to continue its railway across the avenue. We doubt if it would occur to anybody to think otherwise. The question is, then, whether we shall say that the company ceases to be authorized because of such change of name. It seems to us that, for the purposes of travel to the beach over the projected route, Bath Road is but a continuation of Levin Street, and that, even if they are to be regarded as two, they may well be held to meet and unite in the middle of Bellevue Avenue. It cannot be supposed that it was ever contemplated that Levin Street and Bath Road should each have a separate set of cars running only to the sides of Bellevue Avenue, and there leaving their passengers to wend their way, in mud or dust, across the avenue afoot. The entire *rationale* of the grant is inconsistent with such a supposition.

The view which we have taken finds support in another feature of the grant. Power is granted to build not only upon and over the Newport streets not within the exception, but also upon and over the wharves. The important wharves, Commercial Wharf among them, lie along the west side of Thames Street, which is one of the excepted streets. The grant, without right to cross Thames Street, would be a mockery. The inference is irresistible, as the company's counsel contends that such a crossing was not intended to be excluded. But if the crossing of Thames Street be permitted, how is the crossing of Bellevue Avenue forbidden ? It seems to us that there is not reason enough to warrant our finding that power was granted to cross the street and not granted to cross the avenue.                    *Petition dismissed.*

*William P. Sheffield, William P. Sheffield, Jun., & Richard B. Comstock,* for relators.

*Francis B. Peckham & Darius Baker,* for respondent.