# 𝔚𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## POSTAL TELEGRAPH CABLE CO. v. N. & W. R..R. Co.

### March 24th, 1892.

1. TELEGRAPH COMPANIES—*Right of way—Condemnation.*—Code, § 1287, providing that telegraph companies may construct their lines "along and *parallel* to any of the railroads of the state," does not authorize the condemnation of a right of way by a telegraph company along and *upon* the right of way of a railroad company.
2. CONSTRUCTION OF STATUTES.—For rules aiding in construing statutes, see opinion in this case.

Error to judgment of circuit court of Prince George county, rendered September 3d, 1891, in a proceeding in the county court of said county by the plaintiff in error, the Postal Telegraph Cable Company, to condemn the land of the Norfolk and Western Railroad Company, for the use of the plaintiff in error, in erecting its line upon the right of way of the railroad company. This is sequel to *Postal Tel. C. Co.* v. *N. & W. R. R. Co.*, 87 Va. 349. When the case went back for further proceedings, the county court fixed a day for the commissioners to act in the condemnation proceedings to ascertain the damages to be paid by the plaintiff for the right of way desired. This was done, and the commissioners fixed the damage at $200, and the county court of Prince George county approved the report of the commissioners. The Norfolk and Western Railroad Company applied for and obtained a writ of error to the said judgment of the county court, and the case coming on to be heard in the said circuit court of Prince George county

upon said writ of error, the said court reversed the judgment of the said county court of Prince George county, and dismissed the proceedings instituted in said county court by the Postal Telegraph Cable Company against the Norfolk and Western Railroad Company for the condemnation of the property of the railroad for the use of the telegraph company; whereupon, the plaintiff in error, the Postal Telegraph Cable Company, applied for and obtained a writ of error to this court

*J. S. Parrish, Edgar Allon* and *E. C. Burks,* for plaintiff in error.

*Robert Stiles, A. L. Holladay* and *George S. Bernard,* for defendant in error.

Lacy, J., delivered the opinion of the court.

The error assigned by the plaintiff in error is that the circuit court erred in reversing the order of the county court in the premises, it being plainly right, proper, and justified by the law, which had been strictly followed in all the proceedings in the said county court. The county court held that by virtue of Code of Virginia, §§ 1287–1290, the Postal Telegraph Cable Company acquired the right to enter upon the right of way, road-bed and lands of the Norfolk and Western Railroad Company, and by regular condemnation proceedings in the county court of that county take such land of the railroad company as might be requisite for their purposes for the construction of the line of the telegraph company, upon paying such compensation therefor as the commissioners should fix and the county court approve, which was done accordingly. Upon writ of error to the circuit court this judgment of the county court was reversed, and the condemnation proceedings dismissed, as stated; these two courts differing as to the proper construction of the foregoing sections of the Code; the plain-

tiff in error insisting that the act in question gives it the right to go upon the railroad land, which had been acquired for railroad purposes, and the county court agreed with it; the defendant in error contending that the telegraph company had no right to go upon its land, but only alongside of its right of way, or strip of land 100 feet wide, but not on it, and the circuit court agreed with it.

We must first here consider the act in question, and its terms, in order to decide between them. Let us see what is provided by law. Section 1287 provides as follows:

" Every telegraph and telephone company incorporated by this or any other state, or by the United States, may construct, maintain and operate its line along any of the state or county roads or works, and over the waters of the state, and along and parallel to any of the railroads of the state, provided the ordinary use of such road, works, railroads and waters be not thereby obstructed; and along or over the streets of any city or town, with the consent of the council thereof."

Section 1288 provides for contracts for right of way. In this case no contract was or could be made, the railroad company refusing to contract, upon the grounds (1) that the company had already made such a contract with one telegraph company to go on its right of way, and (2) that another line of telegraph would encumber and embarrass their operations and obstruct the ordinary use of their road. Section 1289 provides: " If the company and such owner cannot agree on the terms of such contract, the company shall be entitled to such right of way upon making just compensation therefor to such owner. Such compensation shall be ascertained and made as provided in chapter 46 of the Code for the acquisition of land by a company incorporated for a work of internal improvement, when such internal improvement company cannot agree on the terms of the purchase with those entitled to the lands wanted for the purposes of the company," and that the title acquired by the telegraph company shall be only a right of

way.  Section 1290 provides for a repeal, at the pleasure of
the general assembly.  Section 1074 of the said chapter 46,
mentioned in section 1289, *supra*, is cited by the defendant in
error to show that the condemnation provided for there, and
which is made to apply here by section 1289, provides, as to
the condemnation of land, that the commissioners for condem-
nation shall be appointed by the county in which the land, or
the greater part thereof, lies, for the purpose of obtaining a
just compensation therefor.  And the defendant in error shows
that the land of the railroad company lies in six counties, so
far as the same is sought to be taken, and that the greater part
thereof does not lie in Prince George county; and the conten-
tion is that the land of the railroad company cannot be con-
demned by sections, but must be condemned in its entirety as
a whole, and by one tribunal, that there may be a just and even
rate of compensation.  If there can be any condemnation
under the act in question, still insisting that there is no
authority for the condemnation, nor entry on its lands, it is
insisted further that the legislature, although intending to
authorize the condemnation, has not provided the adequate
machinery or proceeding to accomplish it; that it has pro-
vided no tribunal to ascertain the measure of damages, nor
the mode of condemnation.

It is obvious that the first question for us to consider is what
is the true construction of section 1287 of the Code ?  The
act authorizes the telegraph company to construct its line along
any of the state or county roads or works, along or over the
streets of a town or city.  As to the railroads, it provides that
the telegraph company may construct its line " *along and par-
allel to* " any of the railroads of the state.  Are the phrases
" along any of the state or county roads," " along and parallel
to " any of the railroads, etc., grants of the same character ?
Is the word " along " synonymous with the phrase " along and
parallel to ? "  Both are used in the same section; the former
as to the county roads, the latter as to a railroad.  The

authority is given to go along the county road, but the authority is to go along and parallel to the railroad. Did the legislature mean to give the right to go along the railroad, and therefore upon it? The plain significance as to the county road is to go along, upon, or on it; and this is the way the county road is used by the public. It is a highway for the use of the public, and all the good people of the commonwealth may pass along in it or upon it, at their pleasure, and in their own way. That is the object of its construction, there being compensation for any additional servitude placed there. The railroad is a highway of a different sort. It is of a peculiar sort. It is for the use of the public, and the people may go on it, but only according to the prescription and the mode prescribed by its owners. Its use by its owners is exclusive. No other person nor persons can go upon it except by the leave or the license of its owners, under the penalty prescribed by law against trespassers. It is operated by the dangerous and powerful agency of steam, and its use is not only, by its nature and character, exclusive, but, by virtue of its character and organization, it must be exclusive. To grant its use to others would be to destroy its value and usefulness. If the legislature intended to give the right to go upon the railroad in the same way as upon the county road, it would reasonably have employed the same terms. The terms had already been employed in the same sentence. It would have doubtless said "along the state and county roads or works and the railroads;" but, observing that such a provision would have been necessarily ineffectual, the phraseology was altered, and the right is given to go along and parallel to. It is not pretended that this meant upon a railroad track, but the claim is that the meaning is "along the right of way and parallel to" the track; but plainly there is no such provision. If such had been the legislative intent, such would have been the legislative enactment. The law as to the railroad does not use the word "along," either as to the right of way or as to the track.

It is used as to the county road, " go along the road; " but there is no such provision as to the railroad; go, not along the railroad, but " along and parallel to " it.    The legislature meant what it said.    We have no other means of discovering the intent.    And if the telegraph company have gone " along and parallel to " the railroad this controversy could not have arisen in this form, unless it had gone along and parallel to the railroad in such manner as to obstruct the ordinary use of the railroad, which might have been possible or not, according to the structures erected by it.

In the construction of statutes it is said that it is not permitted to interpret what has no need of interpretation.    When it is expressed in clear and precise terms—when the sense is manifest, and leads to nothing absurd—there can be no reason not to adopt the sense which it naturally presents.    To go elsewhere in search of conjectures in order to restrain or extinguish it is to elude it.    And the popular, received import of words furnishes the general rule for the interpretation of public laws, as well as of private and social transactions; and, wherever the legislature adopts such language in order to define and promulge their action or their will, the just conclusion from such a course must be that they not only themselves comprehended the meaning of the language they have selected, but have chosen it with reference to the known apprehension of those to whom the legislative language is addressed, and for whom it is designed to constitute a rule of conduct— namely, the community at large.    *Maillard* v. *Lawrence,* 16 How.  251; *Arthur* v. *Morrison,* 96 U. S. 111; *Greenleaf* v. *Goodrich,* 101 U. S. 248.    The intention of the legislature is to be found from the act itself, from other acts *in pari materia,* and sometimes from the cause or necessity of the act; and, when the intent can be discovered, it should be followed with reason and discretion, though such construction seem contrary to the letter where the words are obscure; and every part of it should be viewed in connection with the whole, so as to make

all of its parts harmonize if practicable, and give a sensible and intelligent effect to each. It is not to be presumed that the legislature intended any part of the statute to be without meaning, and all statutes *in pari materia* are to be read and construed together, as if they formed parts of the same statute, and were enacted at the same time. The cause and the necessity of this statute were to provide a method by which the telegraph company could procure the right of way for their lines through and across the state. The public roads belong to the state. To pass along and over for all the purposes of the people of the state, they are allowed to go along the public roads. The waters and public works also belong to the state, and they are allowed to go over them. It was desired to go over the railroad for this purpose, and these are public ways, also, within the limitations stated. The railroad furnishes a convenient mode of transportation, and it was desired to avail of these facilities, and erect the lines convenient to these for purposes of access for erection and repairs, etc. When the legislature came to pass upon this question, it is not provided, as it is with reference to county and state roads, the right to erect their lines on the railroads, nor along the railroads, simply, but "along" is coupled with other words, without which it cannot be considered. "Along" is not there alone in the statute, but it is said "along and parallel to." What is the reason of this change in the terms of the grant? We must find the meaning from the words used, taken in their ordinary and usual signification in the community. We cannot reject them, but we must give them their meaning and force. The lexicographers' definition of "along" is "by the length of," as distinguished from "across;" it is not ambiguous. "The kine * * * went along the highway." 1 Sam. vi. 12. "And parallel to," alone, without the word "alone," would bear a signification dependent on the context or subject-matter,—(1) "extended in the same direction, and in all parts equidistant;" (2) "having the same direction or

tendency;" or (3) "like," "similar." But here the words are used with "along," which plainly means "by the length of," not "across." And it is said of two lines, one line (the telegraph line) is to be run "along and parallel to" another line (the railroad line.) "By the length of the railroad line," and "parallel to" it. Does this mean in or upon the railroad line? Or is it intended to give the right to run the line lengthwise alongside, and not contiguous, but equidistant throughout? The county court and the circuit court, each presided over by a learned and able judge, have differed in this respect, and this is the dispute here, about which we have hundred of pages of printed briefs of learned counsel, and many hundred pages of the printed copy of the record in the lower court. Involved in the construction is the question whether the legislature has granted to the telegraph line the right to take the land of the railroad, as it contends, or to construct, under the right of eminent domain, a line or right of way along in the direction of, but not upon, which line shall be equidistant from the first line throughout the whole extent. If the first, the language as to the county roads would seem to have been quite sufficient, "along the railroad," and the words "and parallel to" were unnecessary, and without significance, however they are employed, and must have their sense and signification accorded to them. They are not used at random, but appear to make a distinction of some sort. What is it? Where is this line to run, as to the already-ascertained line of the railroad strip of land? We think it is to run in the direction lengthwise of the first line, alongside of and equidistant from it throughout all its parts, so that neither shall meet or touch; not in nor upon the railroad strip; and that the county court was wrong in its construction of the statute, and that the circuit court was right in reversing its action. There is an earnest protest on the part of the railroad that, having one line already by contract, another could not be run on its land without obstructing its line in its ordinary

use; and also that under the law the railroad is an entirety, and there is no adequate machinery provided for its condemnation, as chapter 46 of the Code does not provide for the case, but for tracts of land, and such as lie partly in more than one county, as to which it is provided that the assessment proceedings shall be in the county court of the county where the greater part of the land lies, which is not true as to the county of Prince George in this case. But none of these questions arise in the view we have taken of the case. The telegraph company is not authorized to condemn the railroad land or right of way in any court; and the judgment of the circuit court appears to be plainly right, and must be affirmed.

LEWIS, P., and HINTON, J., *dissented.*

JUDGMENT AFFIRMED.