# Staunton.

## THE IMMIGRATION SOCIETY OF ALBEMARLE COUNTY V. COMMONWEALTH.

### September 22, 1904.

1. IMMIGRATION SOCIETIES—*Construction of Act of Incorporation—General and Special Powers—License Tax.*—Immigration societies, organized under the Act of March 5, 1894, (Acts 1893-'4, p. 723) are not authorized to sell lands of others than the members of the society without paying the license tax required by the Acts of March 16, 1903, (Acts 1902-'3-'4, pp. 155, 188). The object of such societies, as declared by section 1 of the Act first above mentioned, is "to advertise for sale and to sell or lease the lands of the members of said society," and more general language used in other sections of the Act will be so construed as to carry out the declared object and intention of the Legislature in enacting the statute, and thus reconcile all of the pro-. visions of the Act, and render it harmonious throughout.

2. STATUTES—*Construction—Ambiguous Language—Argument of Inconvenience.*—While the effects and consequences of a statute cannot influence the courts in construing it, where the intention of the Legislature is plain, still the argument of inconvenience, absurdity, injustice, or prejudice to the public interests may be considered by the courts in construing a statute where its language is ambiguous, uncertain, or doubtful.

Error to a judgment of the Corporation Court of the city of Charlottesville, rendered on the trial of an indictment against the plaintiff in error for doing business without a license.

*Affirmed.*

The opinion states the case.

*Robert A. Watson* and *Daniel Harmon,* for the plaintiff in error.

*Attorney-General William A. Anderson* and *John S. Eggleston,* for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

The Immigration Society of Albemarle County was indicted in the Corporation Court of the city of Charlottesville, at the January term, 1904, for unlawfully selling and offering to sell land in the city of Charlottesville without having first obtained a license therefor. Upon the trial of the cause, a jury having been waived, and all matters of law and fact having been submitted to the court, the land company was found guilty of the offence charged, and a fine of one hundred dollars assessed against it. To that judgment this writ of error was awarded.

As the decision of all the assignments of error depends upon the construction of the act under which the plaintiff in error ·was organized and did business, they will be considered together.

It appears from the evidence, indeed it is admitted, that the defendant company, within eight months prior to the finding of the indictment, did, in the city of Charlottesville, where its principal office was located, offer for sale, as land agent, for compensation, lands not owned by members of the land company. It was therefore guilty of violating section 54 of chapter 148 of the Act of Assembly, approved April 16, 1903, entitled "An Act to raise revenue for the support of the government," &c.· (Acts 1902-3-4, pp. 155 and 188), prohibiting any person, firm, or corporation from doing business as a land agent, as therein defined, without the payment of a license tax; unless, as is contended, the defendant was exempt from the payment

of such tax by an act of Assembly, approved March 5, 1894,. entitled "An Act to encourage immigration into the Commonwealth of Virginia, and to promote the sales of lands within the Commonwealth to immigrants" (Acts 1893-4, pp. 723-4), and under which the defendant company was incorporated.

The provisions of the act, so far as they are material to the question under consideration, are as follows:

"1. Be it enacted by the General Assembly of Virginia, That it shall be lawful for ten or more persons owning land in any county of the State to make, sign, seal, acknowledge and put to record in the clerk's office of the court of such county a paper writing in form or to the effect as follows:

'We, the undersigned, owners of land in the county of ............, in the State of Virginia, do hereby form an immigration society to be known as, and bear the name of, the immigration society of.............county, Virginia. The object for which said society is formed is to advertise for sale, and to sell or lease, the lands of the members of said society, in such manner, and upon such terms, as may be provided by the constitution and by-laws of the society adopted by the members thereof. The officers of said society to manage its affairs for the first year and until their successors are elected and qualified, will be a president, a secretary, a treasurer, and a board of directors, which board shall consist of not less than five persons nor more than nine, as the said society at the time of its organization shall determine. The principal office of said society will be at..............., in said county.'

"2. When such writing shall have been so signed, sealed,. acknowledged and recorded in the county court clerk's office,. and a duly certified copy thereof lodged in the office of the Secretary of the Commonwealth for recordation, and another such copy deposited with the Commissioner of Agriculture at Richmond, the persons who signed, sealed and acknowledged it,.

and all others who may thereafter be associated with them, shall be a body corporate and politic under the name set forth in said writing, and as such may have a common seal; may contract and be contracted with; may sue and be sued, and may be appointed an agent or an attorney in fact to sell or lease or exchange lands situate in said county, or in any other county adjoining that wherein is the principal office of such society: provided, however, that there shall not be organized under this act, in any county, more than one immigration society for every one hundred thousand acres of land situate in such county.

"3. Each society organized under this act shall be exempt from the payment of the tax upon said writing for its recordation in the office of the clerk of the county, and in the office of the Secretary of the Commonwealth, and shall not be assessed with a license tax as a land agent, either by the State, the county or the town in which its principal office may be located, and shall be exempt from the payment of taxes to the State upon powers of attorney, or contracts of agency, for the sale of lands recorded in any county wherein it is authorized by this act to do business."

Section 3 exempts all societies organized under, and doing the business authorized by, the act, from the payment, among other things, of a license tax as a land agent, to the State. If the defendant company was not authorized by the statute under which it was organized to act as a land agent for the sale of lands of persons other than its members, it was not exempt from the payment of the license tax in question. It will therefore be necessary to consider the extent of its powers under that statute.

By the first section of the act it is declared that the object for which a society formed under it is created is "to advertise for sale, and to sell or lease, the lands of the members of said

society," in such manner, and upon such terms, as may be provided by its constitution and by-laws. By the second section it is provided that, after perfecting its organization as prescribed .by the act, the incorporators and all others who might thereafter be associated with them shall be a body corporate under the name set forth in the writing provided for in the first section, and may have a common seal; may contract and be contracted with; may sue and be sued, and may be appointed an agent or attorney in fact to sell, lease, or exchange lands situate in the county where its principal office is located, and in any adjoining county.

The language used in the second section of the act, standing alone, is sufficiently broad to authorize a company incorporated under the act to be appointed agent or attorney in fact for the sale, lease, or exchange of lands not owned by its members. But as the object for which the company was authorized to be formed, as declared in the first section of the act, and for which it was formed, as set out in its article of incorporation, was "to advertise for sale and to sell or lease the lands of the members of the society," the other provisions of the act ought, as far as possible, to be so construed as to carry out the declared object or intention of the legislature in enacting the statute. For one of the rules of construction is, that where the object intended to be accomplished by a statute can be clearly ascertained, general words may be restricted and those of narrower meaning may be expanded so as to effectuate that intent. *Orange & A. R. Co.* v. *Alexandria,* 17 Gratt. 176, 182; *Matthews* v. *Com.,* 18 Gratt. 989; *Chalmers* v. *Funk,* 76 Va. 771; *Hutchings* v. *Bank,* 91 Va. 68, 20 S. E. 950; Sutherland on Stat. Const. 287-8; Sedgwick on Stat. Const. 198-201.

In the case of the *Orange & A. R. R. Co.* v. *Alexandria, supra,* it was said by Judge Joynes, in construing a statute exempting property from taxation, which is always strictly con-

strued (1 Cooley on Taxation (2 Ed.), 357 ; *City of Richmond* v. *R. & D. R. R. Co.*, 21 Gratt. 604) : "I think, therefore, that it is clear, upon the construction of this section, that the legislature intended to give to railroad companies, upon payment of the passenger tax, an exemption only from taxation by the State upon their property, and that the right of cities to tax such companies upon their property was not meant to be affected. This intention must prevail over the mere literal sense of the words, and the more so since the words in this case are not explicit, and in order to give effect to the intention it is not necessary to contradict their plain meaning, but only necessary to limit the scope which they would have, or might have, upon a strictly literal interpretation."

By applying this rule of construction to the language of the second section of the act, all of its provisions are reconciled, the act made a harmonious whole and the intention of the legislature in authorizing the formation of such companies, as expressly declared in the first section, is carried into effect, and, in addition, the injustice to land agents doing business under the general laws of the State, and the loss of revenue to the Commonwealth avoided. For if companies organized under the statute in question can carry on the business of land agents generally, within the territory in which such companies are authorized to operate, without the payment of a license tax, and the other taxes and charges from which they are exempted by the 3rd section of the act, it would result in driving other and licensed land agents out of business and thus lessen the revenues of the Commonwealth. While the effects and consequences of a statute cannot influence the courts in construing it, where the intention of the legislature is clear, yet the argument of inconvenience, absurdity, injustice or prejudice to the public interests may be considered by the courts in construing a statute when its language is ambiguous or uncertain and doubtful. Sutherland on Stat. Const., sections 323, 324.

Opinion.

Having reached the conclusion that the defendant company was not authorized by the act under which it was organized to sell or offer for sale lands of persons other than its members, it follows that we are of opinion that it was guilty of the offence charged in the indictment, that the trial court did not err in so holding, and that its judgment must be affirmed.

*Affirmed.*