(70 Misc. Rep. 261.)

PEOPLE ex rel. ERIE R. CO. v. WOODBURY et al., State Board of
Tax Com'rs.

(Supreme Court, Equity Term, Erie County. January, 1911.)

TAXATION (§ 144*)—RAILROADS—RIGHT TO USE STREETS—STATUTE—"SURFACE RAILROAD."

By the Railroad Law, § 4, subd. 4 (now Consol. Laws, c. 49, § 8, subd. 4), a steam railroad corporation has power to construct and maintain its road across and upon any highway which it intersects, and section 90 (now section 170) of that law gives street railroad corporations the right to construct their roads along the streets; hence a railroad has a right to use the streets the same as a street railroad, and, being a surface road,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

is taxable under that provision of the tax law (Consol. Laws, c. 60) defining certain real estate for taxation purposes to be "all surface, underground or elevated railroads including all franchises and rights to maintain and operate the road upon the streets."

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 250; Dec. Dig. § 144.*]

Certiorari by the People, on the relation of the Erie Railroad Company, to Egbert E. Woodbury and others, as State Board of Tax Commissioners, to review determination of defendants of value for taxation of special franchise of relator. Modified and affirmed.

Dowd & Quigley, for plaintiff.
Dana L. Jewell, for defendants.

BROWN, J. The property rights and privileges of the relator in certain streets and highways in the city of Olean and the villages of Gowanda, Little Valley, and Randolph were determined by the State Board of Tax Commissioners to be assessable as special franchises at the following values, viz.: Olean, $4,500; Gowanda, $7,700; Little Valley, $4,000; and Randolph, $11,900. The town assessors assessed the special franchises of the relator at such street or highway crossings at said sums. The relator sued out writs of certiorari to review such assessments alleging that the same were made without any authority of law therefor. The defendants by return controvert such allegation, and allege that such determination and assessment was made under and by virtue of the tax law (Consol. Laws, c. 60) of the state of New York.

Upon the trial of the issue, the sole question presented is as to whether the tax law defining certain real estate for taxation purposes to be "all surface, underground or elevated railroads, including the value of all franchises, rights or permission to construct, maintain or operate the same in, under, above, on or through streets, highways or public places," includes or excludes steam railroads. The contention of the relator is that such definition does not include steam railroads, the argument being that a steam railroad is not a surface railroad; that a surface railroad is solely and alone street railroads, trolley roads, cable roads, and horse railroads, which are constructed on the surface of streets—that is, with rails laid even or flush with the surface of the pavement or roadway; that such railroads follow the grade of the streets—that is, that the grade of the rails is coincident with and the same as the grade of the surface of the streets; that steam railroads running through towns, across counties and the state are not surface railroads, for the reason that they do not follow the grade or surface of the ground; that at all places steam railroads are constructed on embankments, low or high, or through cuts, shallow or deep; that steam railroads are constructed upon grades established for their purpose that are not made with any view of conforming such grade to the actual or original surface of the ground; that it is a matter of general knowledge that at no place does the grade of a steam railroad conform to the general surface of the ground for any sub-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

stantial distance; and that hence steam railroads are not included in the statutory term "surface railroads."

It may be that such a refined and technical distinction between street railroads and steam railroads may be maintained on paper or in theory, but for all practical purposes it is not believed that such distinction exists. If it be true that street railroads of cities and villages are surface railroads because the rails are flush with the pavement or street roadway, and that steam railroads traversing towns and counties are not surface railroads because they are not constructed upon the original surface of the ground, and that such refined and exact reasons alone determine the question, it is very doubtful whether there is technically a surface railroad in existence. Such argument, pushed to its legitimate conclusion, must necessarily exclude from surface railroads all railroads the tops of the rails of which do not exactly coincide with the surface of the pavement or roadway throughout the entire length of such railroads. It is doubtful whether such exact conditions exist throughout those street railroads conceded by the relator to be surface railroads. If the elevation or depression of the top of the rail be ever so slight from the fixed standard assumed to mark the surface of the ground, such elevation or depression must decide the question as to whether the railroad can or cannot be taxed for a special franchise at a highway crossing in cities or villages. As a matter of fact, the street railroads of the cities and villages are not laid on the surface. The rails and ties are all depressed below the surface. All the rail except a fraction of an inch is invariably to be found below the surface. The rail is from six to ten inches high, and, to be within the technical, refined definition of the relator, all of this height must be above the surface of the pavement in order to tax its occupation of a highway as a special franchise; for the railroad must be laid on the surface to constitute it a surface railroad. If a street railroad is a surface railroad when its rails are laid in the surface of the street, then it necessarily follows that a steam railroad is a surface railroad when its rails are laid in the surface of the earth by being placed in cuts or excavations. It is not believed that the specious and ingenious argument that steam railroads are not surface railroads will withstand intelligent and reasonable analysis. The statute is, "All surface, underground or elevated railroads." When it is considered that the relator's railroad traverses the state of New York a distance of more than 400 miles, upon the surface of the earth—the face of the ground—crossing the streets in question at grade, it must be deemed to be a surface railroad.

By subdivision 4 of section 4 of the railroad law (now Consol. Laws 1910, c. 49, § 8, subd. 4), a railroad corporation has power to construct and maintain its road across and upon any highway which the route of its road intersects. By section 90 of the railroad law (now section 170) a street surface railroad corporation has power to construct its road upon and along the streets, avenues, roads, highways, etc., named in its certificate of incorporation or in a statement to be filed. The franchise of a steam railroad to cross a street is thus seen to be identical with that of a street surface railroad. The Court of Appeals in People's R. T. Co. v. Dash, 125 N. Y. 93, 26 N. E.

25, 10 L. R. A. 728, held that the words "in" and "upon" were synonymous with "across" in defining the place of a railroad crossing a highway; and in Met. St. Ry. v. State Board, 174 N. Y. 417, 67 N. E. 69, 63 L. R. A. 884, 105 Am. St. Rep. 674, it was held that the right granted by the state to construct and operate a railroad in the highway is a special franchise under the tax law. It is therefore clear that the relator has a franchise to operate its surface railroad across the streets in question and that such right is a special franchise, taxable as such under the provisions of the tax law.

The assessment of these special franchises being at a higher valuation than that placed upon taxable real estate in these cities and villages, it must be reduced to the following valuations, viz.: Highway crossings in Olean, $3,510; highway crossings in Randolph, $9,282; highway crossings in Little Valley, $3,120; and highway crossings in Gowanda, $6,006. Such reductions being less than half of that claimed before the assessing officers, costs and disbursements are awarded against the petitioner in each of the foregoing proceedings, and judgment is accordingly directed.

Let findings be prepared.