## Wytheville.

THE CHESAPEAKE AND OHIO RAILWAY COMPANY V.
J. THOMAS HEWIN, ADMINISTRATOR OF
MATTIE LOGAN, DECEASED.

June 13, 1929.

The opinion states the case.

*Leake & Spicer*, for the plaintiff in error.

. *Smith & Gordon*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

Plaintiff's decedent, Mattie Logan, lived in New York and was a stranger to the physical environments of Richmond, whither she came in February, 1926, to attend her sister's funeral. Services were held at a church in the central portion of that city, after which the funeral cortege moved over Magnolia street and across defendant's main line to Woodlawn cemetery, whence it returned along the same road. It was on this return that the accident occurred. She was in a car with five other colored passengers, driven by Fred Goodman, its owner. This automobile followed the hearse and was struck at Magnolia street crossing by a freight train going into Richmond, was totally destroyed and Mattie Logan killed. Hence this action, which has terminated in a verdict and judgment for the plaintiff.

There is some conflict as to the volume of traffic in this street, and there is also conflict as to the speed of the train which did the damage, but that it far exceeded the limit fixed by an ordinance of the city of Richmond, if it applies, is not in dispute. That ordinance appears in the City Code of 1910, as section 1 of chapter 39. It is in evidence, and so much as seems pertinent reads as follows:

"If any engine or other vehicle be drawn or propelled upon a railroad or rail-track in a street at a greater rate than four miles an hour, the person who does it or causes it to be done, or assists in doing it, or causing it to be done, shall pay a fine of ten dollars. Every locomotive engine put or placed upon any railroad or rail-track in the city shall have attached thereto a bell of thirty pounds weight at least, and such bell shall be

rung whenever the said engine is about to pass the crossing of any two streets, and shall continue ringing until such engine shall have passed such crossing; and if any engine shall pass across any street in this city without first ringing and continuing to ring said bell, in manner aforesaid, the owner of the said engine, as well as the person then having the control, conduct, and management thereof, shall each be fined not less than five nor more than twenty dollars; and if any person shall blow, sound or use, or cause to be blown, sounded or used, by means of, or with steam, any whistle or other thing upon any public street or alley, he shall be fined not less than five nor more than twenty dollars; and if any railroad company, or their agents or employees shall run more than one train at the same time across the places where their tracks intersect the streets of this city, without providing a watchman to 'flag' each train, said railroad company, as well as the person or persons in charge of such trains, or directing their movements, shall each be fined not less than five nor more than twenty dollars.''

The trial court thought it limited the speed of all trains at all crossings to four miles an hour, and so told the jury in appropriate instructions. The correctness of this construction of the statute is challenged by the railway, and on this point this case in large measure turns. Certain general rules of interpretation are to be remembered.

In *Posey* v. *Commonwealth*, 123 Va. 551, 96 S. E. 771, this court said: "It is one of the fundamental rules of construction of statutes that the intention of the legislature is to be gathered from a view of the whole and every part of the statute taken and compared together, giving to every word and every part of the statute, if possible, its due effect and meaning, and to the words used their ordinary and

popular meaning, unless it plainly appears that they were used in some other sense. If the intention of the legislature can be thus discovered, it is not permissible to add to or subtract from the words used in the statute. *Tyson* v. *Scott*, 116 Va. 243, 81 S. E. 57; *Funkhouser* v. *Spahr*, 102 Va. 306, 46 S. E. 378; *Sherwood* v. *Atlantic and D. R. Co.*, 94 Va. 291, 301, 26 S. E. 943; *Hoover* v. *Saunders*, 104 Va. 783, 52 S. E. 657; *Fox* v. *Commonwealth*, 16 Gratt. (57 Va.) 1; *Postal Tel. Co.* v. *Norfolk and W. R. Co.*, 88 Va. 920, 925, 14 S. E. 803.''

Conditions which make legislation necessary are at times important, particularly when the meaning of words is obscure or when they are susceptible of more than one definition, and in such circumstances the inconvenience or unreasonableness of any particular construction should be considered. *Postal Telegraph Cable Co.* v. *N. & W. Ry. Co., supra; Sherwood* v. *Atlantic & D. R. Co., supra; Immigration Soc.* v. *Commonwealth*, 103 Va. 46, 48 S. E. 509; *Knowlton* v. *Moore*, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969.

Primary and ordinary definitions of words are to be adopted unless their context and the conditions in which they are used appear to make some more meticulous construction necessary. "In" is a word of indeterminate meaning. One who crosses Broad street, for the time being is in it, but certainly "in" is not always a synonym for "across." One may go in that street for miles and never cross it. If a man were told that a train ran upon a track in a certain street, it would never occur to him that a simple crossing was meant, and were he told that the main track of the R. F. & P. R. Co. ran in Belvidere street, he would have little doubt as to its location.

Conceding, as we should, that "in," unqualified, is an indefinite preposition, and waiving for the time the inconvenience which follows that construction for which plaintiff contends, that which was indefinite is made definite by its context. "Upon" is also used. To describe a train crossing Belvidere street as running upon a track *in* it, would be singularly inapt. "Crossing," when applied to highways and railways, is of unmistakable import. It is an accurate expression commonly employed in statutes and elsewhere to fit a particular situation, and for it "in" is an unsatisfactory substitute, all of which the draughtsman of the ordinance must have known.

This instinctive conclusion is well supported by internal evidence. "Across" and "crossing" are there used four times and "intersect" once. The idea of longitudinal progress finds further support in the provision that a bell shall be rung whenever an engine is about to pass the crossing of any two streets. Such a situation would ordinarily arise when it ran along one street and across another. It likewise prohibits the blowing of an engine whistle "upon" any street. "Upon" here means "in" and the prohibition must have been directed against such an act when the engine ran along some street and not when it was in the act of crossing it. Moreover, when this ordinance was enacted, the main line of the R. F. & P. railroad ran through the most populous part of Richmond, and its tracks in the not distant past had extended many blocks down Broad street—conditions which made such restrictions in these localities wise and reasonable, but which called for no such limitations in outlying districts. Again, a reduction of speed to four miles an hour at every crossing within the city's limits would be a regulation highly inconvenient, even if lawful, and at

times wholly unnecessary. Richmond has the power to require gates whenever traffic conditions and public safety call for them, and has often exercised it. These reasons lead us to believe that "in," as here used, should be construed as meaning "along" rather than "across," and we are sustained in this by the weight of authority.

In *Chicago & Western Indiana R. Co.* v. *Dunbar*, 100 Ill. 110, 136-7, the city act was shown to provide that "the city council shall have no power to grant the use of or the right to lay down any railroad tracks in any street of the city, except upon petition of the owners of the land representing more than one-half of the frontage of the street or so much thereof as is sought to be used for railroad purposes." The court said: "The words 'in any street' in the city charter, plainly mean the same as (upon) any street, in the railroad act. In the railroad act it was thought necessary, in order to include the crossing of a street, to add the word 'across' to the word 'upon.' The word 'across' is not found in the phrase in question in the city act, in addition to the word 'in,' and this is because that clause has no reasonable application to the mere crossing of a street. Obviously, this clause has reference only to cases where the city may propose to grant the privilege to a railroad company to run along a street for a given distance. This clause has really no application to a case such as is presented in this record."

In *County of Cook* v. *Great Western R. Co.*, 119 Ill. 218, 10 N. E. 564, following the *Dunbar Case*, it was held that it was not necessary to secure the consent of the municipal authorities of the city of Chicago to cross its streets when the statute made such consent a prerequisite to construction "along" a street, and this principle was reaffirmed in *Stephens* v. *Chicago B. & Q. R. Co.*, 303 Ill. 49, 135 N. E. 68.

In the case of *Minneapolis & St. P. Ry. Co.* v. *Manitou Forest Synd.*, 101 Minn. 132, 112 N. W. 13, the court was confronted with the construction of a provision of the laws of Minnesota relating to public service corporations, quoted at page 149 of 101 Minn. (112 N. W. 17) of the opinion as follows: "But no corporation so formed shall construct, maintain, or operate a railway of any kind, or any subway, pipe line, or other conduit in or upon any street, alley or other public ground of a city or village, without first obtaining from, and compensating said city or village for a franchise conferring such right."

It was called upon to say what "in or upon" meant, and reached these conclusions: "Respondents further claim that it does not appear from the petition that the village authorities of Tonka Bay have conferred on appellant the right to occupy the streets and alleys in the village, as provided in section 2841. [Rev. Laws 1905.] While it may appear from the petition that the proposed right of way will cross some of the streets, we are unable to discover that it is the purpose of appellant to occupy any of the streets, alleys, or public grounds within the village for the purpose of operating its railroad thereon. Section 2841 applies only where it is the intention to make use of the street or public ground for the purpose of operating such railway thereon; that is, upon or along the street. But, when it is the purpose to merely cross a street, alley or public ground, as an incident in the construction of a railroad through the country, then, under the provisions of section 2916, the right of way may be condemned, unless the company and public authorities otherwise agree as to the manner and terms of crossing."

In the case of *International Falls* v. *Minnesota, D. & W. Ry. Co.*, 117 Minn. 14, 134 N. W. 302, that

court again had occasion to consider the same subject. The inquiry was: "Has the legislature provided that the consent of a city or village is necessary before its streets may be crossed by railroad tracks? Section 2841, R. L. 1905, provides that no railway corporation 'shall construct, maintain or operate a railway of any kind * * * in or upon any street, alley or public ground of a city or village, without first obtaining from, and compensating said city or village for a franchise conferring such right.' "

It adhered to its judgment in the *Minneapolis & St. Paul Suburban Ry. Case*, 101 Minn. 132, 112 N. W. 13, and held that the prohibition against construction "in or upon" a street referred to longitudinal occupation and not to street crossings.

In *Seaboard Air Line Ry. Co.* v. *Smith*, 53 Fla. 375, 43 So. 235, it was held that a speed limit governing trains which ran through streets had no application to simple crossings, and this conclusion was reaffirmed in *Seaboard Air Line Ry. Co.* v. *Tomberlin*, 70 Fla. 435, 70 So. 437.

In *State* v. *Newport Street Railway*, 16 R. I. 533, 18 Atl. 161, it was held that a charter provision which authorized a street railroad company to construct and maintain its tracks "upon and over such streets" in the city "except in" streets therein named, did not prevent the laying of tracks across the excepted streets.

*Smith* v. *Galveston-Houston Electric Ry. Co.* (Commission of Appeals of Texas), 277 S. W. 103, dealt with a crossing accident and with the construction of the words "along" and "upon." It is then said: "We do not think article 6735 of Vernon's Sayles' Civil Statutes can be construed as requiring interurban railway companies to obtain the consent of county authorities before placing their tracks across a public road; such

consent is only required when the railway track is constructed 'along and upon' a public road. If, however, the construction of the track across the road could be held unlawful, such trespass upon the highway could not be regarded as the proximate cause of plaintiff's injury, but at most would constitute a nuisance of which only the public could complain."

A different conclusion was reached by the Court of Appeals of New York, as is shown by this excerpt from its opinion:

"The act of 1860 prohibits the building of any railroad 'in, upon or along any of the streets or avenues of the city of New York.' It is contended that this act properly construed only prohibits the building of a railroad through the length, or a portion of the length of a street, and does not reach the case of a railroad which merely crosses the streets of that city. I cannot agree to any such narrowing of what seems to me the plain meaning of the language used in the act. If the road was built through the length of a street, its location might be fairly described by the use of either one of three words contained in the statute, 'in, upon or along' such street. But to describe a road which simply crossed a street as being built 'along' such street, would be using language neither appropriate nor exact. To say of such a road that it would be 'in' or 'upon' that street at the point where the road crossed it, would be both appropriate and exact. There is a difference in the meaning of these three words as used in the statute, and some effect should be given to such difference. If their meaning be construed to simply prohibit a railroad along the length of the street, no effect whatever is given to this difference. The words used are certainly apt to describe a railroad which crosses a street. Such a railroad is plainly, for that distance, both 'in' and

'upon' the street which it crosses. If not 'in or upon' it at that point, where is it? No description of its whereabouts at that particular point is better than to say it is 'in or upon' the street which it crosses. It is sufficient and it is true." *Peoples Rapid Transit Co. v. Dash*, 125 N. Y. 93, 26 N. E. 25, 10 L. R. A. 728.

This court thought that "along" was adequate to describe a road built through the length of a street and that some weight should, in addition, be given to the words "in" and "upon."

Judge Peckham, continuing, said: "And again it is well known that sometimes more words are used in a statute than are actually necessary to express the meaning of the framers. The fact that the word 'across' or 'intersect' has been frequently used in former statutes where they intended to permit or prohibit the crossing of a street, is not of any great importance in the construction of another statute in which such word is absent, provided the language actually used is sufficient and appropriate to express the idea that the crossing is permitted or prohibited. If the language be broad enough, and there be no other ground for narrowing its natural meaning, it should not be narrowed because in some other statutes additional words have been used to express the same idea."

We have already seen that there were limitations imposed on the word "in" by other language written into the Richmond ordinance, and that reliance is placed, not upon the fact that "across" and "intersect" appear in other statutes, but in the very statute in judgment.

The New York court was probably in a measure swayed by the gargantuan proportions of the work contemplated. "A great viaduct, two stories high, one sixty and the other seventy-five feet above the

level of the ground, built on arches and going through miles of solid blocks of buildings in a populous city, never, it is safe to say, entered the minds of a single legislator who voted for this act. It was beyond the imagination of any."

On the other hand, the local situation calling for the Richmond statute must have been, and doubtless was, in the minds of its draughtsman and of the city council.

Two judges dissented. Earl, J., said (26 N. E. 29): "The question turns upon the scope and meaning of the words 'in, upon and along,' the counsel for the land-owner contending that they embrace the crossing of a street, while the counsel for the company contends that they only refer to railroads built along and through a street, and we are of that opinion. Such is their natural and ordinary import. According to general usage and the common understanding of business men, a railroad simply crossing a street would not be considered to be constructed 'in, upon or along' a street. "* * * That the meaning we have attached to the words 'in, upon or along' in the act of 1860 is the legislative sense of them, is made quite apparent by a reference to many legislative acts, authorizing and regulating the construction of railroads in this State. It is believed that these words have never been used in any act so as to embrace the crossing of a street, but that one of the appropriate words 'across,' 'cross,' or 'intersect' has always been used in all legislation as to the crossing of streets by railroads."

This New York case was followed in *N. Y. L. & W. R.* v. *Roll*, 32 Mis. R. 321, 66 N. Y. Supp. 748; and *Peoples* v. *Woodbury*, 70 Mis. R. 261, 127 N. Y. Supp. 201, to this extent, namely, they hold that tax laws applicable to railroads in a street apply to those which cross it.

In *Southern Ry. Co.* v. *Rice*, 115 Va. 235, 78 S. E. 592, this court said that an engineer was guilty of negligence when crossing 14th street at excessive speed. It would appear that the train was moving in a street before it reached 14th street. This statement is there made: "There was evidence that the engine operated by plaintiff's decedent was moving, with fifteen loaded and five empty cars, from the eastern end of the city over or across 14th street, on a slight upgrade, on its way to Manchester; that just before reaching the line of 14th street, or while in the street, the engine was derailed," etc. If it were not in the street, certainly the language is ambiguous.

This ordinance was again dealt with in *Atlantic Coast Line R. Co.* v. *Tyler*, 124 Va. 484, 98 S. E. 641, and was disposed of in one paragraph, which reads: "The second instruction complained of was one given for the plaintiff, and related to the speed of the train, and told the jury that if the train was operated at a rate of speed greater than four miles an hour, the rate fixed by an ordinance of the city, then this was negligence, and that if they believed that this negligence was the proximate cause of the accident and that the plaintiff was free from negligence, then they must find for the plaintiff. No authority is relied upon to support his objection, and we find no error in the instruction."

In neither of these cases was the issue stressed. That the speed limit applies to intersecting streets is entirely clear, but its application to the crossing of a single street is here sharply presented for the first time.

So much of the ordinance as deals with the ringing of the engine bell declares that "every locomotive engine put or placed upon a railroad or rail-track in the city shall have attached thereto a bell of thirty pounds weight, at least, and such bell shall be rung

whenever the said engine is about to pass the crossing of any two streets, and shall continue ringing until such engine shall have passed such crossing; and if any engine shall pass across any street in this city, without first ringing and continuing to ring said bell, in manner aforesaid, the owner of the said engine as well as the person then having the control, conduct and management thereof, shall each be fined."

It is said that the bell must be rung whenever the engine is about to pass the crossing of any two streets, and there is no controversy about the railroad's duty on such an occasion; it must continue to ring until such crossing has been passed. The ordinance then goes on to provide: "* * if any engine shall pass across any street in this city, without first *ringing* and continuing to *ring* said bell, in manner aforesaid," etc., a fine shall be imposed. Plainly, "in manner aforesaid" has no reference to locality but to the manner in which the bell is to be rung—that is, it must be rung continuously where a single street is crossed, just as it must be rung when intersecting streets are.

Decedent was but a passenger. The car was secured by the undertaker and driven by his chauffeur, who chanced to be the owner. There was no joint enterprise and Mattie Logan had no control whatever over the automobile in which she rode. If we concede that the chauffeur was grossly negligent, such negligence cannot be imputed to her. *Va. R. & P. Co.* v. *Gorsuch*, 120 Va. 655, 91 S. E. 632; Ann. Cas. 1918B, 838; *Director General* v. *Pence's Admr.*, 135 Va. 329, 116 S. E. 351; *Hancock* v. *N. & W. Ry. Co.*, 149 Va. 829, 141 S. E. 849; *C. & O. Ry. Co.* v. *Meyer*, 150 Va. 656, 143 S. E. 478; *Norfolk & Portsmouth B. L. R. Co.* v. *Parker*, 152 Va. 484, 147 S. E. 461.

■ Nor was Mattie Logan guilty of any primary negligence. She was, as we have seen, a stranger to the physical situation and had no knowledge of the danger. A very satisfactory discussion of the law applicable to such a situation is made by Judge McLemore in the *Hancock Case*.

■ ■ It is contended that independent of the doctrine of imputed negligence the defendant is not liable if the negligence of the driver of the automobile was not a concurring cause but was the sole proximate cause of the accident. This is true; to answer for one's own sins is enough. Of course, the defendant is not liable unless that negligence in some degree contributed to the accident. *Etheridge* v. *Norfolk Southern R. Co.*, 143 Va. 789, 129 S. E. 680. When the trial court reached the conclusion that the speed ordinance applied to this crossing, and so instructed the jury, it was warranted in believing that the accident would never have occurred had it been observed. *C. & O. Ry. Co.* v. *Meyer, supra.* Here it is plain that the driver's negligence was not the sole proximate cause of the collision. With this out of the way it was still necessary that the bell be rung, and as to it there is conflict of testimony. If the jury should be of opinion that it was not, then the court could not say, as a matter of law, that this dereliction had nothing to do with the accident; that the driver would not have heeded its warning but would have continued to plunge headlong into danger. It is also for the jury to say whether the right of way for 100 feet on each side of the crossing was cleared of trees and bushes.

■ The jury, by its verdict, has found that the defendant was guilty of negligence, but it is not possible to say what particular act of negligence it believed had been established. It may have thought that it was

negligent in that it did not observe a speed ordinance. It may have thought that the statutory signal of approach was not given, it may have believed that the right of way was not cleared of trees and bushes, and it may have been of opinion that independent of any statutory regulations this train, within the corporate limits of the city, was running at a rate of speed reckless and excessive. Upon any one of these theories a verdict might logically have been based, assuming that it was supported by sufficient evidence, and contributed to the inquiry, as to which we express no opinion. In such circumstances, a wrong instruction as to any of them is prejudicial error. *Va. R. & P. Co.* v. *Wellons*, 133 Va. 350, 112 S. E. 843; *Director General* v. *Pence*, *supra*; *Jenkins* v. *Trice*, 152 Va. 411, 147 S. E. 251 (March 21, 1929).

We have heretofore reached the conclusion that the trial court was in error in holding that the ordinance limited the speed of trains to four miles an hour at the Magnolia street crossing. From that it follows that a new trial must be had to ascertain if it was negligent as to other shortcomings charged in the declaration, and if such negligence was the occasion of the accident. Since these matters must be resubmitted to a jury, we have refrained from their discussion.

This case is reversed and remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed and remanded.*