STENDIG DEVELOPMENT CORPORATION V. CITY OF DANVILLE.

March 4, 1974.

Record No. 730181.

Present, All the Justices.

*Walter E. Rogers (George B. Anderson; Williams, Mullen & Christian; Anderson & Anderson*, on brief), for appellant.

*W. Bascom Jordan, City Attorney for the City of Danville*, for appellee.

Per Curiam.

By final decree entered December 30, 1972 and letter opinion dated November 7, 1972 incorporated by reference therein, the chancellor denied the prayer of the amended bill filed by Stendig Development Corporation (Stendig) against the City of Danville (Danville) for specific performance of an alleged contract of sale of a parcel of land owned by Danville and used as a source of gravel and fill dirt.

Subject to the right to reject all offers, Danville advertised the "shale pit" for sale under sealed bids to be opened at the September 4, 1969 meeting of the City Finance Committee. When that meeting was cancelled, the chairman of the committee, in the presence of the city clerk, opened the two bids received. Stendig's $32,000 bid was the high bid.

At the September 9, 1969 meeting of City Council, General Development Company, Inc., the only other bidder, challenged acceptance of Stendig's bid on two grounds, viz., that the bids were improperly opened and that Stendig's president, a member of the City Planning Commission, had a conflict of interest. After first adopting and then reconsidering a resolution to reject all bids, Council adjourned to meet in special session on September 12, 1969. At the meeting on that date, Council voted 6 to 3 in favor of a substitute resolution that Stendig's bid "be, and the same hereby is, accepted with the understanding that the purchaser would defend all actions against said purchase." City Attorney W. Bascom Jordan advised that passage required an affirmative vote of 7 of the 9 members of Council and ruled that the substitute resolution had failed. Stendig's president, who participated with Council's permission in discussion at the meeting, did not object to the ruling.

The original resolution to reject all bids and re-offer for sale with bids to begin at $32,000 was then defeated by a vote of 5 to 4. Following a brief recess, Council adopted by a vote of 9 to 0 a resolution resolving "that all bids . . . be rejected and . . . the City Attorney is hereby authorized and directed to submit to the Corporation Court of Danville, Virginia the question of the propriety of the manner in which the bids for said property were opened and also whether or not the purchaser . . . comes within the conflict of interest provisions of Chapter 2 Section 19 of the City Charter upon a Petition for Declaratory Judgment."

Upon Danville's petition (to which Stendig was made a party defendant), the court on December 14, 1970 entered a declaratory judgment order declaring that the bids were properly opened; that the conflict of interest question had become moot; and that "the bids . . . having been rejected by the Council of the City of Danville, Council now has the option to rescind its rejection and accept the higher bid of Stendig Development Corporation or to ask for new bids to begin at $32,000". No appeal was taken to the order.

Thereafter, Danville advertised "shale pit" for sale at public auction to be held on July 8, 1972. On July 7, 1972 Stendig filed a memorandum of *lis pendens*. At the auction, General Development Company, Inc., offered the high bid of $51,000. Council has not acted on the bid.

The crucial issue turns upon the construction of the following excerpt from the Code of the City of Danville, § 2-17:

"No ordinance or resolution selling any public property shall be valid unless the same be passed by the council by a recorded affirmative vote of three-fourths of the members elected to the city council."

Danville contends that "any public property" as used in its ordinance includes all property owned by the City of Danville. Stendig contends that it includes only property set aside for use by the general public; that "shale pit" is not such property; and that the substitute resolution adopted by Council on September 12, 1969 by a majority vote, having never been formally reconsidered, constituted an acceptance of its offer and created an enforceable contract.

The first sentence of Section 125, Constitution of Virginia (1902)[1] provides in part as follows:

"The rights of no city or town in and to its water front, wharf property, public landings, wharves, docks, streets, avenues, parks, bridges, and other public places, and its gas, water, and electric works shall be sold, except by an ordinance or resolution passed by a recorded affirmative vote of three-fourths of all the members elected to the council. . . ."

The three-fourths vote limitation of the Constitution applies only to the sale of property dedicated to public use. Any ordinance or statute authorizing cities or towns to sell such property under an ordinance or resolution passed by a smaller vote would be unconstitutional. But neither § 125 nor any other part of the Constitution proscribes a city or town from adopting an ordinance imposing a three-fourths vote limitation on ordinances or resolutions to sell *any* of its property.

Nor does Danville's charter[2] or any other statute forbid Council to adopt such an ordinance. Chapter I, § 4, para. (52) of the charter authorizes Council to "sell, lease or otherwise dispose of" city property and Chapter II, § 10 provides that no ordinance shall be adopted "unless it shall have received the affirmative votes of *at least* five members." (Emphasis supplied). Council could not, of course, violate the charter's minimum restriction on its powers, but the charter does not forbid Council to place a greater restriction on its own powers, so long as the restriction is reasonable.

---

[1] Replaced by Va. Const., art. VII, § 9 (1971).
[2] Acts 1952, c. 578.

But Stendig argues that the ordinance should be construed as no more than a paraphrase of § 125 of the Constitution and cites as legislative history a letter written to Council by former City Attorney Rutledge C. Clement, scrivener of an amendment adopted in 1955. Clement's letter is relevant to the legislative history of the 1955 amendment; but since that amendment did not affect the pre-existing language here in issue, his letter is not probative of the legislative intent of those who earlier employed the language "any public property".

In the absence of legislative history to the contrary, we must give "to every word . . . its due effect and meaning, and to the words used their ordinary and popular meaning, unless it plainly appears that they were used in some other sense." *Chesapeake & Ohio Ry.* v. *Hewin*, 152 Va. 649, 653-54, 148 S.E. 794, 795 (1929). The unrestricted language "any public property" appearing in § 2-17 does not reveal on its face an intent to constrain its application in the narrow sense urged by Stendig. Such construction renders the adjective *"any"* surplusage.

In its broadest scope, this language clearly comports with the construction urged by Danville. Section 2-17 imposes its three-fourths vote limitation upon any ordinance or resolution selling "any public property". That mandate is not self-limiting to property named in § 125 of the Constitution and dedicated to the public use. On its face, it applies to any and all property owned by the City of Danville which Council may want to sell. As used in this context, the phrase "any public property" appears to be as broad as the phrase "non-private property". And without evidence to the contrary, we must presume that, when they wrote this language, those who employed the phrase so intended. We hold that the three-fourths vote requirement of § 2-17 is applicable to the "shale pit" property owned by Danville and that the vote of Council on September 12, 1969 to accept Stendig's bid did not meet that requirement.

Since Council did not accept Stendig's offer as prescribed by the ordinance, no enforceable contract came into being and it is unnecessary to consider other assignments of error. The decree denying specific performance is affirmed.

*Affirmed.*